## SMITH v. STOKER.

1. When there is no statute requiring a schedule in a deed of assignment, if the property be described with reasonable certainty, no schedule is necessary.
2. If a deed of assignment sufficiently describing the property provides for the future attachment of a schedule, the title passes to the assignee, though the schedule be never annexed.

*Appeal from District Court of Pueblo County.*

Messrs. DECKER and YONLEY, for appellee.

Messrs. CHARLES E. GAST and J. M. WALDRON, for appellee.

HELM, J.   Longsdorf, Holmes & Co., a mercantile firm in Pueblo, made an assignment of their stock of merchandise, fixtures, etc., to appellee, for the equal benefit of all the firm creditors.   Appellee assumed possession of the property under the deed of assignment, and proceeded to retail the goods at private sale, in pursuance of the conditions of the trust.   About twenty days thereafter, appellant, the United States marshal, levied a writ of attachment on three-quarters of the stock, the writ issuing against Longsdorf, Holmes & Co., at the suit of one of their creditors.   At the expiration of eleven or twelve days after the levy, appellee, as the assignee aforesaid, replevied the goods from the marshal; upon the trial of the replevin suit he recovered a verdict, and judgment for the possession, and also for $2,000 as damages for the wrongful taking and detention of the merchandise.   To reverse this judgment the appeal now before us is taken.

The deed of assignment contains the following description of the property assigned:   " All of the goods, wares and merchandise of every kind, nature and description, being and consisting of the stock of goods situated in the building heretofore occupied by said firm, on the

north side of Fourth street, between Santa Fe avenue and Main street, in the city of Pueblo aforesaid, and being the stock in trade of the said firm; also the fixtures in said store heretofore used in connection with the said business; also all the promissory notes, book accounts and other claims and evidences of indebtedness now held by and owing to the said firm, it being intended hereby to convey and transfer all the property and assets of the said firm of every kind, nature and description, and wherever situated, said goods and chattels, rights and credits being more fully described and enumerated in a schedule thereof, hereto attached and marked 'Schedule A;' to have and to hold the same, and every part thereof, in trust, for the uses and purposes following." * * *

At the trial of the replevin suit it appeared, by unquestioned proofs, that, by direction of the assignee, the document referred to in the instrument as "Schedule A" was detached subsequent to the execution of the deed and delivery of the property, and another and different schedule attached in lieu thereof. The court received the deed of assignment in evidence with the schedule last above mentioned appended thereto. The principal error urged here challenges the ruling admitting this deed.

The evidence, in our judgment, does not justify the suspicion that there was actual bad faith in the transaction on the part of either assignor or assignee. Was the detaching of the first schedule, "A," from the deed of assignment, and the appending of the second schedule thereto, sufficient *per se*, so far as this suit is concerned, to call for the rejection of the deed when offered in evidence?

Where there is no statute requiring a schedule, if the property be described with reasonable certainty in the deed, no schedule is necessary to the validity of an assignment. This proposition is so strongly supported by authority as well as reason that it may be considered *res adjudicata*. It may also be accepted as settled law, that

if such a deed (that is to say, one sufficiently describing the property) provides for the attachment *in future* of a schedule containing a more specific description, the title and right of possession pass to the assignee, though the schedule be never annexed, the intent being clear, in such cases, that the appending of the schedule shall not be a condition precedent to the taking effect of the deed.

The instrument before us is sufficiently specific in this particular, and had no schedule been mentioned, it would have covered the property attached by the marshal. But, since it speaks of a schedule containing a more complete description of the property assigned as "hereto attached," counsel for appellant contend that without such schedule the deed was inoperative. They hold that such a schedule, when referred to as already attached, is a material part of the deed; that the rule that special words in an instrument control and limit general terms therein on the same subject is applicable; that the proper legal inference is that the parties did not intend the deed to take effect without the schedule; and, therefore, that the assignment is a special and not a general one. And they support their views with a liberal citation of authorities.

The granting clauses of the deed under consideration, as will be observed by reference thereto, contain a very complete general description of the property conveyed. The following is among the other expressions used therein: "It being intended hereby to convey and transfer all the property and assets of the said firm, of every kind, nature and description, and wheresoever situate." This language, coupled with the other descriptive expressions in the deed, is stronger, as indicating the intent of the assignors to transfer *all* of their property, than that of any of the cases cited. And it is possible we might be constrained to give it this effect, regardless of the auxiliary rule of interpretation above mentioned, had no schedule been attached.

But, as we view the case, it is unnecessary for us to determine this question; for, as already stated, at the time of its delivery the deed was accompanied by a "Schedule A;" and in this case we may assume that the title to the property described in the deed and schedule actually vested in the assignee.

The question upon which we are called to pass relates to the effect upon the deed, as evidence, produced by detaching this schedule and annexing another. If we were not informed concerning the contents of the original "Schedule A," the subject would be much more perplexing; because we would then have nothing but the language left in the instrument from which to determine the materiality of the change thus effected therein.

But uncontradicted testimony shows that this schedule was merely an approximate estimate of values fixed upon the five different items of assets, viz.: stock, fixtures, good accounts, insurance rebate and rent. It in no way changed or affected the general description of the property given in the deed and above quoted in full. It was not a material part of the deed; in no view was it important even, except as furnishing the beneficiaries of the trust and the assignee with a clue concerning the probable proportion of the liabilities that might in the end be discharged; a matter foreign to the sufficiency of the deed in accomplishing the purposes of the assignment. The foregoing is equally true of the substituted schedule, which is simply a more accurate statement of values given the assets upon completion of the invoice.

The proofs, upon which the foregoing conclusions as to the original schedule rest, might not have been admissible had timely objection been taken; these proofs referred to the contents of a written instrument, and a proper foundation for their admission was not laid. But part of the testimony was drawn out by appellant's counsel in cross-examination, and all of it was received without objection or exception.

Under the circumstances the exchange of schedules did not materially change the contract; it did not alter the legal tenor or effect of the instrument, nor did it affect the rights or liability of any person interested therein. See cases cited in note to *Waring v. Smith*, 2 Barb. Ch. 120; and also cases mentioned in note to *Woodworth v. Bank of N. A.* 10 Am. Dec. 267.

It is proper, though perhaps not necessary, to here re-advert to the fact that there is nothing else in the record indicative of bad faith in the original assignment; while the exchange of schedules is so explained as to do away with the slightest suspicion of fraud in connection there-with; this exchange was made as soon as the invoice could be taken, before any controversy arose, and seventeen days prior to the levy of the writ of attachment; the purpose being to append a more accurate valuation of assets.

The suggestion may be made that the original "Schedule A" containing no "description or enumeration of goods and chattels, rights and credits," but merely a general statement of values, was not what the deed called for, and, therefore, the deed was defective. The obvious answer to this objection must be that it was designated and marked "Schedule A," and was attached to the deed at the time of its execution; and, therefore, we must regard it as the identical schedule referred to by the parties, though their language descriptive thereof is somewhat inaccurate.

We conclude that no error was committed in receiving the deed of assignment in evidence. It should be remarked in passing, that the court proposed to exclude the substituted schedule, but counsel for appellant demanded that the whole conveyance be rejected or that it be received as an entirety including this schedule.

Counsel's objection to instruction number 1 given to the jury is more specious than real. Quoting their own language: "The court told the jury that if the plaintiff

as assignee was in the open and exclusive possession, holding the property in controversy in this action, without fraud, for the purpose of disposing of the same for the benefit of creditors, etc., then the plaintiff was the legal owner of the property." It might be urged with reason, in view of the punctuation, that the phrase " without fraud " is not limited to the conduct of the assignee, that it relates to the whole transaction, and the jury might well understand that the assignors must also have acted without any fraudulent purpose; but if the instruction is open to the charge of ambiguity in this particular, it is cured by the clear and unequivocal language employed in the remaining instructions. The jury are repeatedly told that if there was a fraudulent intent on the part of Longsdorf and Holmes, or either of them, in making the assignment, it was void.

Counsel's objection to the sixth instruction is equally without merit. The jury are instructed that if they find for the plaintiff, " they will also find his damages sustained by reason of the taking and detention of the property; and *as to this* the jury are instructed that the plaintiff is entitled as general damages to interest on the value of said property during the time it was detained from his possession by the defendant at the rate of ten per cent. per annum."

The jury are not told, as counsel seem to contend, that they may find the damages for the taking and detention, and in *addition*, interest on the value, etc.

The item of interest is mentioned as one of the elements of damage produced by such taking and detention. The doctrine that in such cases interest as general damages is recoverable upon the value of the property wrongfully detained was announced by this court in *Tucker v. Parks*, 7 Colo. 62; and a re-discussion of the subject is, therefore, unnecessary.

There are no special circumstances connected with this case which prevent the application of the rule that the

declarations of the assignor, made after the assignment and delivery of possession, in the absence of the assignee, are not admissible in evidence against the latter; there was, therefore, no error in rejecting the evidence offered to prove such declarations.

We deem a discussion of the remaining assignments of error unnecessary.

The judgment is affirmed.

*Affirmed.*