RAYNOLDS V. RAY, SHERIFF, ET AL.

1. ATTACHMENT OF REAL ESTATE — PROVISIONAL LIEN, HOW ACQUIRED — SERVICE OF WRIT NECESSARY TO PRESERVE LIEN.— Under sections 99 and 101, Civil Code (1883), a valid levy of a writ of attachment may be made on real estate and a valid lien acquired by indorsing thereon a description of the property attached and filing a copy of such writ, so indorsed, in the recorder's office of the county wherein the real estate is situated. The levy of the writ creates a provisional lien; but before a valid judgment can be rendered which will preserve and make the lien effective, there must be service of the writ and summons on the defendant.

2. OBJECT OF PERSONAL SERVICE OF ATTACHMENT WRIT.— The service of the attachment writ on the defendant is required by the statute to enable the defendant to deposit the money sued for, and thus prevent the lien from taking effect; or, if it already exists, to secure its dissolution; also to afford him an opportunity to traverse the matters stated in the affidavit for attachment.

3. SETTING ASIDE INVALID JUDGMENT — ENTRY OF VALID JUDGMENT AFTER SERVICE OF WRIT — ATTACHMENT LIEN PRESERVED.— Where a writ of attachment was levied on real estate of a debtor and judgment entered without service of either the attachment writ or summons, but afterwards, on discovering the error, the

judgment was set aside and a new judgment entered, after personal service of an *alias* summons and of a copy of the attachment writ, *held*, that the lien acquired at the commencement of the action by the levy of the writ was preserved and continued in force.

4. ENJOINING ILLEGAL JUDGMENT — SUBSEQUENT VALID JUDGMENT NOT AFFECTED THEREBY.— The fact that a sheriff had been perpetually enjoined from selling property on an execution issued upon the original judgment in a case, on the ground that·it was entered without service of summons on the defendant, is not an adjudication of the validity of a judgment subsequently entered therein after service of process, nor of the effect of an execution issued on the latter judgment and levied upon the property of the debtor.

5. ASSIGNMENT FOR BENEFIT OF CREDITORS — VALID WITHOUT SCHEDULE.— In the absence of a statute requiring a schedule, an assignment for benefit of creditors of "all the estate of" the assignor of every kind and description, a schedule of which property the assignor promises to make out and annex to the deed, is sufficient without a more particular description, and is not invalidated by a failure to make out such schedule.

### *Error to District Court of Chaffee County.*

THIS was a suit instituted in the district court of Chaffee county by Frederick A. Raynolds, as assignee of Hartzell Bros., to enjoin Robert Ray, as sheriff of that county, together with E. B. Jones and J. T. Blake, judgment creditors of Hartzell Bros., from selling certain real estate of the assignors on executions issued on judgments obtained by said creditors in the county court.

Both parties claimed priority of lien upon the real estate in controversy, the plaintiff in error by virtue of the assignment, the defendants in error by virtue of the judgments, and the levy of executions issued thereon, claiming the judgments to have been secured by the levy of writs of attachment on the property before the articles of assignment were filed for record.   The validity of the attachment liens was denied, but the district court held them to be valid.

The provisions of the Code of Civil Procedure (1883) involved are as follows:

"§ 94.   The plaintiff, at the time of issuing the sum-

mons in an action on contract, express or implied, or at any time afterwards before judgment, may have the property of the defendant not exempt from execution attached as security for any judgment that may be recovered in such action, in the manner prescribed in this chapter, unless the defendant shall give good and sufficient security to secure the payment of such judgment."

"§ 99. The writ shall be directed to the sheriff of any county in which the property of such defendant may be, and require him to serve a copy of the writ on the defendant, and to attach and safely keep all the property of such defendant within his county, not exempt from execution, or so much thereof as may be sufficient to satisfy the plaintiff's demand, the amount of which shall be stated in conformity with the affidavit, and *alias* writs may issue at any time, unless the defendant deposit the amount or give him security by the undertaking of at least two sufficient sureties, in an amount sufficient to satisfy such demand besides costs, or in amount equal to the value of the property which has been or is about to be attached, in which case the sheriff shall take such undertaking. Several writs may be issued at the same time to the sheriffs of different counties."

"§ 101. The sheriff to whom the writ is directed and delivered shall execute the same without delay, and if the undertaking mentioned in this chapter be not given by the defendant, then as follows:

"*First.* Real property standing upon the records of the county in the name of the defendant shall be attached by filing a copy of the writ, together with a description of the property attached, with the recorder of the county." * * *

On and prior to the month of September, 1882, Frederick S. Hartzell and Wilbur J. Hartzell were engaged in a general banking business in the town of Silver Cliff, Custer county, under the firm name of Hartzell Bros. They were likewise the owners of the real estate involved

in this action, situate at Salida, in Chaffee county. On
September 4, 1882, they made an assignment of all their
property, real and personal, to A. J. Rising, for the bene-
fit of all their creditors. Mr. Rising accepted the trust,
but on September 6th resigned the same, and Raynolds,
the plaintiff in error, was on that day appointed assignee
of the estate of said bankrupts by the judge of the dis-
trict court of the sixth judicial district. He accepted the
appointment, qualified, and proceeded to execute the
trust.

The deed of assignment to Rising was recorded in the
office of the clerk and recorder of Custer county on Sep-
tember 5th, at 11:47 A. M.; and it is alleged in the com-
plaint filed by Raynolds in this action that it was also
recorded in the office of the county clerk and recorder of
Chaffee county on the same day. The defendants in
error, E. B. Jones and J. T. Blake, being creditors of said
Hartzell Bros., brought suit against them for the recov-
ery of their respective demands in the county court of
Chaffee county on September 5, 1882, at the same time
causing writs of attachment to be issued and levied on
certain real estate belonging to their debtors at Salida,
in said Chaffee county. Copies of these writs of attach-
ment, with the levies indorsed thereon, were filed for
record in the recorder's office in Chaffee county on the
same day, September 5, 1882, the writ in the *Jones Case*
being filed at 9:20 o'clock A. M., and the writ in the
*Blake Case* being filed at 9:30 o'clock A. M. Judgments
by default were rendered against the Hartzells, September
18, 1882, and execution issued to the defendant in error,
Robert Ray, as sheriff of Chaffee county, who levied the
same upon the attached real estate and advertised it for
sale thereunder. Raynolds, as assignee of the bankrupts,
thereupon filed in the district court of Chaffee county a
petition against said Robert Ray, sheriff, to enjoin the
sale of the property, alleging, *inter alia*, that said judg-
ments were entered up in the county court against the

Hartzell Bros. by default and without service of summons. A temporary writ of injunction thereupon issued restraining the sales until the cause should be heard. Ray answered the petition January 18, 1883, admitting that he had advertised the property for sale by virtue of the two executions, but alleging that the county court had, on November 22, 1882, vacated the judgments and ordered the return of the executions, and that in compliance with said order he had returned the same, and prayed that the petition be dismissed. Thereupon Raynolds moved for judgment on the pleadings in the district court; whereupon the sheriff and his successors in office were, by order of the court, perpetually enjoined from selling said real estate on the executions issued on the judgments entered by the county court on the 18th of September, 1882. The journal entries of the county court made in these cases recite that, it having been brought to the knowledge of the county court that the judgments were void because entered without service of process on the defendants, they were vacated, and *alias* writs of summons ordered to issue. Personal service of the *alias* writs of summons was had upon the Hartzell Bros. in Chaffee county on January 17, 1883. Copies of the original attachment writs were delivered to them at the same time. On the 19th day of February following, judgments were again entered in the county court of Chaffee county against them and in favor of said E. B. Jones and J. T. Blake respectively; the judgment in favor of Jones being for $1,500 and costs of suit, and the judgment in favor of Blake being for $510 and costs. On these judgments executions were issued February 6, 1883, which were by the defendant in error, Robert Ray, as sheriff of said Chaffee county, levied upon the attached real estate, and the same was again advertised for sale, the day of sale named being the 24th day of March, 1883.

This brings the history of the case up to the institution

of the present action.   On March 23, 1883, being the day preceding that on which the real estate levied on by virtue of the last-mentioned executions was advertised to be sold, the plaintiff in error again applied to the district court of Chaffee county for an injunction to stay the sale thereof; alleging invalidity of the latter judgments of the county court, and the prior rights acquired by the plaintiff in error to the property levied on by virtue of the assignment of Hartzell Bros. for the benefit of their creditors.   On presentation of that petition to the district judge the sale was again temporarily enjoined. Testimony was then taken under order of the court, and a hearing of the matters in issue had before the court at the January term thereof, 1884, when the court gave judgment for the defendants, Robert Ray *et al.*, dissolving the injunction previously granted, and dismissing the complaint at the costs of the plaintiffs.

Messrs. H. W. HOBSON and A. MACON, for plaintiff in error.

Mr. G. K. HARTENSTINE, for defendants in error.

MR. JUSTICE ELLIOTT delivered the opinion of the court concerning the validity of the attachment liens.

The vital question in this action is, Who has the better claim to certain real property located in Chaffee county, Colorado, belonging to Hartzell Bros., copartners, etc., the plaintiff, Raynolds, their assignee, or the defendant, the sheriff of Chaffee county, who levied attachments thereon for certain creditors of said copartnership? The assignment was executed in Custer county on September 4, 1882.   The writs of attachment were issued out of the county court of Chaffee county, and the sheriff made and recorded his levy in Chaffee county on September 5, 1882, a few hours before the articles of assignment were recorded in Chaffee county; and neither he nor the at-

tachment creditors had any notice of the assignment
until after the recording of such levy. The judgments
first rendered in these attachment cases were adjudged
void for want of service of the writs of summons and at-
tachment upon the defendants, and the sale of the prop-
erty thereunder was perpetually enjoined by the district
court of Chaffee county. Prior to this, however, these
first judgments were vacated on motion of plaintiffs; and
alias writs of summons and attachment were thereupon
issued and duly served, January 17, 1883, and valid judg-
ments were rendered thereon in February thereafter.
To restrain the sale of the attached property under these
latter judgments, the present action was brought by the
assignee. These are the substantial facts. It is claimed
in behalf of the assignee that the levy of the attachment
writs on September 5, 1882, was void for all purposes;
and that, after vacating the first judgments, the defend-
ant must not only be served with writs of summons and
of attachment, but that there must be also a fresh levy
of the attachment writs.

We cannot admit this claim of the plaintiff in error.
"The requisites of an attachment of real estate are gen-
erally determined by statute." Drake, Attachm. § 236.
We are of opinion that by filing a copy of the writ of
attachment, together with a description of the property
to be attached, with the recorder of the county, a valid
levy was made, and that a valid lien upon the property
was thereby created. Code 1883, § 101; Emory v. Yount,
7 Colo. 107; Brown v. Tucker, 7 Colo. 30. To conclude
otherwise is to disregard the purpose and largely destroy
the efficacy of the attachment act. The main purpose
of attachment proceedings is to secure a lien upon the
property of a failing or fraudulent debtor; and to say
that such a debtor must in all cases be notified of the
service of the attachment writ before a lien can be
created is to give him the opportunity of perpetrating
the very wrong which the attachment may be intended

to prevent. By the levy under a writ of attachment before the service thereof, the plaintiff acquires a provisional lien upon the property levied on; but, before a valid judgment can be rendered by which the attachment lien is preserved and made effective, there must be proper service of the summons and the writ of attachment. *Moore v. Thayer*, 6 How. Pr. 47.

Sections 99 and 101 of the code, construed together, do not seem to be inconsistent with these views. Section 99 provides that *alias* writs may issue unless the defendant deposit the amount, or give security by an undertaking in an amount sufficient to satisfy the demand and costs, or in amount equal to the value of the property which has been or is about to be attached. Section 101 specifies how the sheriff shall proceed to execute the writ if the undertaking mentioned in section 99 be not given by the defendant. A fair construction of these provisions would seem to justify the conclusion that the service of the attachment writ is required for the purpose of enabling the debtor to deposit the money sued for, and thus prevent the lien from taking effect; or, if the lien already exists, thus to secure its dissolution; and also to enable him, in case he shall see fit so to do, to traverse and put in issue the matters stated in the affidavit of attachment. In a majority of cases, the levy of the writ will either precede or be made simultaneously with the service thereof. In some cases, the officer may serve the writ before he makes the levy, and in such cases the statute provides that, if the amount of the claim be deposited, the levy shall not be made.

There was nothing in the conduct of the plaintiffs in the attachment suits indicating bad faith, or any intention on their part to waive or abandon their lien, nor were they guilty of laches in any of the proceedings. They acted with reasonable dispatch. True, they made a mistake in causing judgments to be entered before the summons and writs of attachment had been served; but

when such mistake was discovered they proceeded with diligence to rectify the error by recalling the executions, vacating the judgments, and by suing out and serving *alias* writs of summons and attachment; so that, in less than six months after the levy of their writs of attachment, judgments were entered which are conceded to be in all respects regular and valid. Upon these judgments executions were at once issued; and the defendant sheriff was proceeding to sell thereunder the property attached when enjoined by the present action. We think there was no unreasonable delay in obtaining service of summons or of the writs of attachment upon the defendants, nor was there any unreasonable delay in obtaining judgment and execution.

We have noticed in this opinion only what we regarded as the principal assignment of error, for the reason that the dissenting opinion of the chief justice, filed herewith, satisfactorily presents the views of the court upon other points of the case.

For the reasons announced in this opinion the judgment of the district court is affirmed.

*Affirmed.*

CHIEF JUSTICE BECK (dissenting upon the validity of the attachment liens) delivered the opinion of the court on other points.

The first specific error alleged in the foregoing proceedings is that the matters and things in controversy were shown by the evidence on the hearing of this cause to have been *res adjudicata*. This alleged error rests only on the fact that the sheriff of Chaffee county and his successors in office had been perpetually enjoined by a decree of the district court of said county, rendered January 18, 1883, from selling the real estate in controversy under executions issued upon judgments of the county court of Chaffee county rendered without service of process, on September 18, 1882, in favor of the plaintiffs

Jones and Blake against Hartzell Bros. These judg-
ments had been previously, to wit, November 27, 1882,
vacated and set aside by the county court. New judg-
ments were afterwards, on February 19, 1883, entered
therein by the county court, after personal service had
upon said Hartzell Bros. on January 17th preceding. The
matters adjudicated in the prior injunction proceeding,
and now claimed to have properly controlled the subse-
quent proceeding as *res adjudicata*, as appears from the·
former decree, were simply the invalidity of the former
judgments of the county court and the executions issued
therein. The matters now in controversy were not de-
termined in that proceeding. Jones and Blake were not
restrained by the decree entered therein from proceeding
to obtain valid judgments against Hartzell Bros., nor
was the sheriff restrained from executing writs of execu-
tion that might be issued on subsequent judgments when
obtained. It is not sufficient to conclude these parties
that some of the matters now in issue may have been
properly within the issues presented by the complaint in
the former injunction suit. The fact that they were not
involved in the consideration and determination of that
case, which clearly appears from the decree itself, is fatal
to the point raised, that said decree constituted a bar to
the subsequent proceedings in the county court. Wells,
Res Adj. 3.

The next point necessary to be noticed is the proposi-
tion made by plaintiff in error that the deed of assign-
ment created a prior lien on the real estate in controversy
in favor of the creditors generally, for the reason that
the writs of attachment were not executed or served
until January 17, 1883, which was long after the assign-
ment had been made. The questions here presented
grow out of a contest between creditors of a common
debtor; two of the creditors striving for priority in the
satisfaction of their claims by virtue of alleged liens
against a portion of the property included in the assign-

ment. The debtor firm assigned their property for the benefit of all their creditors on a certain day, and the next day two of the creditors, Jones and Blake, brought suits against the debtors upon their respective demands, causing writs of attachment to issue in aid thereof, as provided by chapter 6 of the Civil Code, and to be levied on a portion of the property assigned.

The transcript shows that the writs of attachment ·were issued and levied on the real estate in controversy on the 5th day of September, 1882, and that copies thereof were filed for record in the recorder's office of Chaffee county on the same day, one at the hour of 5:25 A. M., and the other at 9:20 A. M. It also shows that the deed of assignment to A. J. Rising was filed for record in the same office, on the same day, at the hour of 11:47 A. M., but it does not appear from the bill of exceptions that either Jones or Blake had notice of the assignment until after the levy and filing of their attachment writs, and both of them testified that they did not know of the assignment prior thereto. It further appears that the judgments rendered by the county court in favor of Jones and Blake on September 18, 1882, were rendered without service on the debtors of either the writs of summons or attachment.

The first question arising upon the facts is one of statutory construction. The statute authorizing a writ of attachment to issue in aid of a civil action requires, as part of its execution, that it be served on the defendant. Civil Code, § 99. This section applies to real as well as personal property, and gives the person whose property is about to be seized or has been seized on such writ an opportunity to prevent the levy of the writ, or, if the levy has been made, to obtain an immediate release of the property by securing the payment of the plaintiff's claim. This is an important right, the full benefit of which cannot, in many cases, be enjoyed unless notice of the issuing of the attachment writ be given as pro-

vided by the statute, viz., by its service on the defendant. What authority exists for saying, in the face of the statute, that an attachment lien may be acquired, without serving a copy on the defendant at the time of the levy in a case where, as in the present instance, no obstacle existed to prevent such service? The failure to do so is a violation of the statute and leaves the writ but partially executed. Copies of these attachment writs were not served on Hartzell Bros., defendants below, until the expiration of four and a half months after they were levied on the property in controversy, that being about four months after the entry of the first judgments against them in favor of the defendants in error. It is now contended that this service related back to the issue of the original writs and perfected the liens previously acquired by the levies then made. If this mode of executing the writs was a compliance with the requirements of the statute, the proposition may be maintained; otherwise it must fail. Was it a compliance with the statute? I think not. The only latitude the statutory provisions permit of, in relation to the performance of the several acts required to constitute an execution of the writ, is that they may be performed contemporaneously. The statute is mandatory, and, in order to create a valid lien on real property, its provisions must be strictly observed. To my mind the claim is absurd that any effect whatever could be produced by service of copies of these original writs on the defendants, with the levies indorsed thereon, four and a half months after the levies were made and four months after the entry of judgments in these cases. The original writs were then *functus officio*, and the copies served were equally inanimate. The spirit and the purpose of the statute had long prior thereto been defeated by the failure to serve copies on the defendants when the levies were made. The originals being but partially executed, their execution could not be aided in the manner attempted so as to secure liens upon the

property in controversy, and especially liens which would relate back to the levy of the writs and take priority over the articles of assignment.

It must be borne in mind that these suits were not actions *in rem*, but ordinary civil actions, with attachments in aid, and jurisdiction attaches in civil actions only "from the time of the service of the summons." Code, § 49. The first judgments entered were void for the reason that there had been no service of summons in either case. Up to this time, therefore, the court below had acquired no jurisdiction either of the persons of the debtors or of the subject-matter of the actions. While valid judgments may have been subsequently procured by the issuing and serving of *alias* writs of summons on the 17th day of January, 1883, I am clear that no attachment liens were ever perfected in these cases; for to hold otherwise would be to say that a plaintiff may at his pleasure dispense with an important step in a prescribed statutory procedure — a step, too, designed for the benefit of the defendant — and still avail himself of the remedial provisions of the statute in his favor. The attachment writs, having been issued in these cases at the time of the issuing of the original writs of summons thereon, must be regarded as returnable to the same term of court, viz., the September term, 1882. The sheriff's returns to these writs, as they appeared indorsed thereon when the judgments were entered up by default at that term, bore date September 5, 1882, and stated that he had levied them on certain real estate and personal property, and that he had filed in the recorder's office certified copies of the writs levied on the real estate, giving the dates on which he performed these acts. On January 17, 1883, he added to these returns the following: "And by delivering a copy to each of the within-named defendants this 17th day of January, 1883." The rule is laid down in Drake, Attachments, section 211, that, "when an attachment has been returned, the return is beyond the reach of the

officer and of the court into which it is made, unless a proper case be presented to the court to grant leave to amend it." No case was presented to the court for an amendment, and no leave to amend the return appears to have been given; but, if leave had been granted, it would have been equally unavailable. It was held in *Wheaton v. Neville*, 19 Cal. 42, that "after the return of the writ to the clerk's office the sheriff had no authority to take any proceedings for the completion of the attachment which he had previously omitted. Its efficacy as a warrant of authority to him was limited to acts performed while it remained in his possession. The filing was therefore ineffectual for any purpose, and the posting of a copy of the writ upon the premises, or a delivery of a copy to the occupant, was of itself, as we have stated, insufficient to perfect the attachment. There was, in consequence, no lien created upon the premises."

An attachment on real property, under the California Code, section 125, is made "by leaving a copy of the writ with an occupant thereof, or, if there be no occupant, by posting a copy in a conspicuous place thereon, and filing a copy, together with a description of the property attached, with the recorder of the county." In construing this section the supreme court of that state say: "To complete the service, and create a lien, both the acts required by the statute must be performed. Neither the filing with the recorder without the service or posting of a copy, nor the performance of the latter act without the filing, will amount to a service of the attachment and create a lien on the property. The performance of both acts is essential to create the lien." *Main v. Tappener*, 43 Cal. 206; *Wheaton v. Neville, supra.* In so far as the proceedings under review partake of the nature of attachment proceedings, the general rules and principles applicable to attachment proceedings, and not inconsistent with the statute, are applicable to them. A principle in point is that attachment proceedings were unknown to

the common law, are in derogation of it, and, since the authority therefor is conferred alone by statute, in order to be valid they must conform in all essential particulars to statutory requirements, and all facts showing juris-diction must appear on the face of the proceedings.  In 1 Wade, Attachments, section 126, it is said: "In order that there may be a valid levy, even where all the pre-requisites thereto may have been complied with, it is essential that the executive officer pursue the statute under which he acts.   *   *   *   The immediate object of the levy being to create a lien in favor of the plaintiff, it is indispensable, in order to have this effect, that the offi-cer having charge of the writ shall omit no act in making the levy which the governing statute prescribes.  Where the writ is required to be served upon the defendant, and the service is personal, the manner of service is the same as that of original summons in an ordinary action or proceeding."

The foregoing considerations dispose of the attachment liens.  By default of the judgment creditors to observe the requirements of the statute no liens accrued up to the time of the entry of the first judgments, and there-after no liens could lawfully accrue, as against the cred-itors claiming under the deed of assignment, by virtue of any service of such writs subsequently made.

Failing to sustain their liens, defendants in error pro-ceed to attack the deed of assignment, and allege that it is so defective as to be void.  Their counsel say: "There is no evidence that any schedule of the assignor's prop-erty was ever made out, even for the use of the assignee." He argues that, while our statute did not require the making of a schedule when this assignment was made, yet to prevent fraud and to protect the rights of cred-itors the property assigned should be in all cases de-scribed or designated in a manner that would notify the assignee as well as the creditors what property, and whether all the debtor's property, has been conveyed or

not.    He also contends that this assignment was evasive and uncertain, in that it purported to convey all the debtor's property described in a schedule to be attached thereto, which was never done.

The logical deductions claimed to arise from the foregoing facts and considerations are that no property was conveyed by the assignment, that it was not intended to convey any, but that the purpose of its execution was fraudulent, and that the instrument is consequently void.

Referring to Exhibit A in the record, which we understand to be a transcript of the original deed of assignment to A. J. Rising, introduced in evidence on the hearing in connection with the deposition of said assignee, the granting clause is found to be essentially different in structure and effect from the foregoing representation.    It is as follows: "Now, this indenture witnesseth that the said parties of the first part, in consideration of the premises, and the sum of $1 to them in hand paid by the said party of the second part, the receipt whereof is hereby acknowledged, hath granted, bargained, sold, transferred, assigned and set over, and by these presents do grant, bargain, sell, assign, transfer and set over, unto the said party of the second part, his executors, administrators and assigns, all the estate, real and personal, of the said parties of the first part, of every kind and description, a schedule of which property the said parties of the first part will make out with all convenient speed, the same, when made, to be annexed to this indenture and considered a part thereof; to have and to hold the same, and every part and parcel thereof, with the appurtenances, unto the said party of the second part, his heirs and assigns, forever; in trust, however," etc.; setting out the trust.    It will be seen that the grant is of the entire estate of the debtors, real and personal, and that it is wholly independent of the parenthetical clause, wherein the assignors promise to make

out and attach to their deed a schedule of the property comprising their estate. The description contained in this instrument was capable of being made sufficiently certain to sustain an ordinary conveyance, and upon reason and principle it would seem that the transfer to the assignee of the firm property, as made for the purposes expressed in the deed — that of being appropriated to the payment of the firm debts — ought to be sustained, as against these objections.

Mr. Burrill, in his work on Assignments (page 165), says: "A mere imperfection in the description will not, however, have the effect of invalidating the instrument, unless where there is a failure to comply with some express statutory provisions, and a description in general terms has frequently been held unobjectionable." Among the illustrations of this doctrine he cites the case of *Pingree v. Comstock*, 18 Pick. 46, wherein it was held that the words, "all his lands, tenements and hereditaments," were sufficient to pass all the real estate of the debtor, without a more particular description. Concerning the effect of a failure to attach a schedule of the property assigned, he says (pages 179, 180) the general rule on the subject appears to be that the mere omission to annex the schedule is not in itself sufficient to avoid the assignment, and that it has been so laid down in New York, New Hampshire, Massachusetts, Connecticut, Missouri, Mississippi, Alabama, Michigan, Virginia, Kentucky, California, Iowa, Texas, Wisconsin, and by the supreme court of the United States. See, also, *Smith v. Stoker*, 8 Colo. 286.

While the authorities are not entirely uniform on the subject, the weight of authority is in favor of sustaining an assignment for the benefit of creditors, otherwise valid, whenever the description contained in the deed is such that the property intended to be conveyed may be ascertained or identified by the aid of parol evidence. The rule may be otherwise where, by the terms of the

statute, the making and attaching a schedule of the property assigned is made a prerequisite to a valid assignment. Upon principle and authority, therefore, I think the objections should not prevail in the present case. The mere failure to annex the schedule authorizes neither the inference nor the consequences insisted upon by counsel for defendant in error, namely, that "legally and logically no property was conveyed, and the natural and reasonable inference is that none was intended to be conveyed, but. that the instrument was fraudulent and void."

In view of the foregoing principles of law, and other considerations, the judgment of the district court should be reversed and the cause remanded.

*Affirmed.*