[No. 3822.]

REYER, ET AL. V. TEARE.

1. EVIDENCE—*Relevancy.* Barton and Blaisdell owned a tract of land in undivided moieties. Barton, by a deed not recorded, conveyed his moiety to Blaisdell, merely to enable the latter to effect a sale thereof for Barton. Subsequently Barton and others, in an action against Blaisdell, levied an attachment upon the whole tract, as the property of Blaisdell. *Held* that correspondence between Barton and Blaisdell, solely in reference to Barton's interest, and his conduct as Blaisdell's agent had no tendency to give notice to any of the plaintiffs of any sale, or contemplated sale, of Blaisdell's interest. (369-372)

2. ATTACHMENT OF LANDS—*When the Lien Attaches.* Whenever a copy of the attachment writ, with a description of the property attached, is filed with the Recorder of the county where the land is located. (374)

*Appeal from Denver District Court.* HON. GEO. W. ALLEN, Judge.

MR. NORTON MONTGOMERY, MR. HORACE N. HAWKINS for appellants.

MR. ROBERT M. WORK, MESSRS. VAN CISE, GRANT & VAN CISE for appellee.

HURLBUT, J., rendered the opinion of the court.

Reversed with instructions.

January 15, 1910, appellee, as intervenor, filed his petition of intervention in the case of *Reyer et al, v. Blaisdell,* No. 3911, decided at this term. In the latter case plaintiffs sued out a writ of attachment in aid, and caused the same to be levied upon property standing of record in the name of defendant.

The petition alleges in brief that on or about September 19, 1909, said writ of attachment was levied upon certain described real estate in Morgan County as property belonging to defendant Blaisdell; that at the time the writ was levied, and for sometime prior thereto, said intervenor was and had been the owner in fee simple of the same; that the levying of the writ as aforesaid cast a cloud upon his title, and, by reason thereof, he had been hindered and prevented from pro-

curing a loan thereon, and from making sale thereof; that he will be obliged to pay divers sums in witness fees, costs, and other expenses, to secure a discharge of the lien created by the levy. It is further alleged on information and belief that at the time the writ was levied plaintiffs knew that the property attached belonged to intervenor; that plaintiffs, in causing said levy, did so wrongfully, unlawfully, maliciously, and under circumstances showing a wanton and reckless disregard of the intervenor's rights and feelings; that by reason thereof, intervenor had been damaged in the sum of $3,000 actual damages, and $500 exemplary damages; closing with a prayer that the attachment be discharged so far as applicable to intervenor's property, and for $3,500 damages.

Answer to the petition was filed, denying the allegations thereof, but admitting the levy of the writ of attachment as alleged; alleging that at the time the writ was levied the property attached stood on the records of Morgan county in the name of said defendant Blaisdell; that if, at the time of issue and levy of the writ of attachment, intervenor had any interest in the property attached, it did not appear of record, and plaintiffs had no knowledge or information thereof. Replication filed.

The case was heard on the merits, without a jury, and the trial judge rendered judgment in favor of intervenor in the sum of $2,000, from which judgment this appeal is prosecuted.

The following facts are shown by the record to be undisputed, viz: The writ of attachment was issued September 15, 1909, filed for record in Morgan county September 16th, and served upon defendant September 20th. At the time the same was filed, the records of that county showed that defendant Blaisdell owned an undivided one-half interest in and to the property attached, and that no title to the premises appeared of record in the name of intervenor. Prior to the issuing of the writ of attachment and levy thereof, intervenor had a warranty deed for the premises attached, from defend-

ant, dated July 15, 1909, but the same was not recorded until
October 7, 1909. In 1907 plaintiff Barton executed and
placed in the hands of defendant Blaisdell a deed for the un-
divided one-half of the land in controversy, but by express
agreement and understanding between them no title passed, it
being agreed that Blaisdell was to hold the deed in his pos-
session and seek for a purchaser of Barton's interest in the
premises, and said deed was to be considered as delivered only
in case such purchaser was found and sale made.

The above facts being undisputed, but one question need
be considered to determine this appeal, and that is: At the
time of the issue and levy of the writ of attachment, did plain-
tiffs have information of intervenor's unrecorded deed to the
premises attached, or knowledge of any facts concerning the
same that would put them, as prudent men, upon inquiry as
to its existence or non-existence? We will briefly review the
evidence on this point. Defendant plainly and repeatedly
testified that on this occasion he first met Barton Friday morn-
ing, September 17, 1909, before either the attachment papers
or summons had been served upon him, and told him he had
sold his interest in the land and was ready to pay him the
money. The record shows that on September 20th Barton
received from Blaisdell a letter dated September 13th, therein
stating that he (Blaisdell) thought he had succeeded in selling
Barton's interest in the property. From this it appears that
Barton knew nothing of the sale of his interest until after
the writ of attachment had been levied and the lien fastened
upon the property. Appellee's counsel urgently insist that in
the letters and telegrams passing between Barton and Blais-
dell before the suit was brought it appears that the former
knew his interest had been sold or was about to be sold.
We do not think so. We have carefully read this correspond-
ence and discover nothing therein to justify Barton in believ-
ing his interest had been sold or pledged in any manner. It
goes no further than to show that for the greater part of two
years prior to the levy Barton had repeatedly and earnestly

urged Blaisdell to sell his (Barton's) interest in the land; that on June 8, 1909, Barton made a specific offer (by letter and wire) to defendant to sell him his interest in the premises for $500, and that defendant, by letter of June 12th, accepted the same. The subsequent correspondence however shows defendant never acted on the acceptance or paid anything thereon. Barton, by letter, censured defendant for failing to carry out his contract, and severely criticised him for not sending the money in pursuance of his acceptance. A letter, dated August 3, 1909, reads in part as follows:

"Your letter of July 27th received, in reference to the land at Fort Morgan. When I offered to sell you my entire interest in the same for five hundred dollars ($500) that was a direct offer to you, and was intended for immediate acceptance by you, cash to be sent to me at once. Your reply accepting my offer was agreeable to me, and I certainly expected you to send the five hundred dollars ($500) with your acceptance. I cannot wait until you scour the country for a buyer before you settle, and request that if you want my interest at that price send in five hundred dollars ($500)."

August 24th Barton again wrote defendant, from which the following is taken:

"I am very sorry to hear that you have called off the sale of the Rickle ranch (land in issue). When one accepts a man's offer, you would think it was for immediate purchase. I know it is so in all other transactions, so I cannot see why it would not be in this one. You accepted my offer. But we will let it rest there."

It would therefore appear from these letters that as late as July 27th defendant had entirely abandoned any intention to purchase and pay for Barton's interest under the offer and acceptance of June 8th and 12th. From Barton's letter of August 24th, just referred to, it appears that Blaisdell had been trying to sell the former's interest to some one else, but had called the deal off. From this situation how can it be reasonably said that Barton was warranted in believing that

his interest had been sold to any one, or that any option or deal was pending therefor? As late as August 24th, Barton knew of no one who was contemplating the purchase of his interest, nor did he know of any option or deal pending for the sale thereof. Under such circumstances, and in the light of this correspondence, a prudent man in Barton's position would consider that at the time he came to Denver, about September 12th, the contemplated sale to Blaisdell had long since been abandoned, and that no other person was even considering a purchase of his interest, and particularly would he be justified in this belief as the relations between himself and Blaisdell had at that time become somewhat strained.

We have thus far been considering the question of notice to Barton of a sale or contemplated sale of *his own* interest in premises attached. It is entirely immaterial to any issue in this case, and we only discuss it because of the correspondence upon which defendant in error so strongly relies to show notice to plaintiffs of the existence of intervenor's unrecorded deed at the time of the levy. In all this correspondence, aside from the letter of September 13th from Blaisdell to Barton (above mentioned) and which was not received by the latter until after the suit had been brought and writ levied, there is not a scintilla of evidence that even tends to show that Barton, or any of his co-plaintiffs, had any knowledge or information that Blaisdell had sold or intended to sell *his own* interest in the attached premises prior to the levy. The writ was levied only upon the right, title and interest, of Blaisdell in the premises. As we read the record, plaintiff fails to show that, at the time of the levy, any of the plaintiffs had notice of intervenor's unrecorded deed or of any facts that would put them upon inquiry as to its existence, and therefore failed to establish that the writ of attachment was wrongfully levied upon his interest in the premises. Under the case as made by the pleadings, the intervenor could not possibly recover against plaintiffs unless he had shown by a fair preponderance of the evidence that the writ of attachment in

question had been wrongfully levied upon his property and that such levy caused the damage complained of. The property attached, standing of record in the name of Blaisdell (defendant), was lawfully levied upon by the writ, unless the intervenor proved that, at the time, plaintiffs had notice of his unrecorded deed. There is no contention on behalf of the intervenor that any of Barton's co-plaintiffs had *actual* knowledge of the unrecorded deed, or of any facts suggesting the possible existence thereof. Appellee only seeks to charge them with such knowledge because (as he claims) their co-plaintiff Barton possessed such knowledge. It is unnecessary to decide this question, as we have already concluded that the record fails to show that even Barton possessed this knowledge.

It might be here said that the findings and judgment of the trial court in this case do not mention or refer to the writ of attachment, or pass upon the question as to whether or not it was wrongfully issued in the first instance, or wrongfully levied upon the property of the intervenor. Such findings and judgment are simply in favor of the intervenor, his damages being assessed at $2,000. The trial court appears to be entirely consistent in this regard. It is apparent that the court only considered on the trial of this intervention the question of damages sustained by the intervenor, because, over a month before, it had found judgment in favor of defendant Blaisdell as against the plaintiffs, and dissolved the writ of attachment sued out in aid of the action. This being the condition of the trial court's record at the time of the hearing on the intervention, it could do nothing else than consider the writ of attachment as having been improperly issued in the first instance, or that under the traverse the grounds of attachment were not sustained. In the main case referred to, we have reversed the lower court and held it was error to render judgment against Barton's co-plaintiffs, and was also error to sustain the traverse to plaintiff's affidavit, and dissolve the attachment. It therefore follows that

the writ of attachment was properly issued, and the levy thereof fastened a lien upon defendant's interest in the premises attached, and such lien was enforceable against the interest of intervenor in the premises, notwithstanding his unrecorded deed therefor.

Something has been said by counsel touching the time when a lien on real property becomes effective under levy by writ of attachment, and they seem to contend that the lien does not become effective until after the recording and service of the writ upon defendant. The Supreme Court has decided to the contrary, and holds that a valid lien is created upon real property at the time the copy of the writ, together with a description of the property to be attached, is filed with the recorder of the county where the property is located. *Raynolds v. Ray,* 12 Colo. 108, 20 Pac. 4.

It follows from what has hereinbefore been said that the court erred in rendering judgment against plaintiffs, and the same will be reversed with instructions to the lower court to dismiss the action at appellee's costs.

*Reversed with instructions.*