## The International Bank of Chicago

*v.*

## Joseph H. Bowen *et al.*

1. Estoppel—*equitable.* Where an act is done or a statement made by a party, which can not be contradicted or contravened without fraud on his part and injury to others whose conduct has been influenced by the act or statement, the character of an estoppel will attach to what would otherwise be mere matter of evidence, and the party will be concluded from denying or disproving it.

2. Same—*to show that notes secured by trust deed were paid.* Where a party purchased land upon which there was a deed of trust to secure the payment of two notes of $5000 each, the payment of which he assumed, and which he did pay, and obtained a release from the trustee, and afterwards procured a loan of $5000 of a bank, giving these notes as collateral security, the bank having no notice of their payment or of the release, and such loan was procured by his and others' acts and representations leading to the belief that the notes were unpaid, and the deed of trust still a valid and subsisting lien: *Held,* that the borrower and those co-operating with him to create such belief and cause the loan, were, in equity, estopped from showing and insisting upon the fact of the payment of the notes, and the release, and that the bank was entitled to a foreclosure of the trust deed, to

the extent of the sum due on such loan, but not for other indebtedness of the borrower.

3. PAYMENT—*notice.* Where a note secured by deed of trust on land, when offered as collateral security for a loan, had stamped upon it, "Cook County National Bank, Chicago—Paid June 16"—which words were erased by a pen having been drawn through them, and this it was insisted was notice of its payment, it was *held,* that being erased, the reasonable inference would be, that these words had been placed there by mistake, and the procuring of the written consent of two other parties interested indorsed on the note, consenting that the time of its payment might be extended for one year, was also held to be inconsistent with the fact of its payment, and was a guaranty it was not paid.

4. ESTOPPEL—*applies to assignee of one bound by notice.* Where a party purchases notes, secured by deed of trust, of a bank, whose officers are estopped from showing the release of a prior deed of trust and payment of the indebtedness secured, against another bank loaning money on the faith of the prior trust deed being valid, such purchaser, in equity, will stand in no better position than the bank of whom he purchased.

APPEAL from the Circuit Court of Cook county; the Hon. E. S. WILLIAMS, Judge, presiding.

This was a bill in chancery, by the International Bank of Chicago, against James H. Bowen, Ira Holmes and others, to foreclose a deed of trust. The material facts of the case are stated in the opinion of the court.

Messrs. ROSENTHAL & PENCE, for the appellant.

Mr. JONAS HUTCHINSON, for part of the appellees.

Mr. GEO. W. SMITH, and Mr. CHARLES W. THOMAS, for appellee Pieper.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

The purpose of this appeal is, to procure the reversal of a decree of the court below refusing to foreclose a certain deed of trust, and dismissing the bill at the complainant's costs.

The instrument, of which foreclosure is prayed, was executed by James H. Bowen to Henry M. Ketchum, as trustee, on the west $53\frac{1}{3}$ acres (or one-third) of the north-west quarter

of section 10, township 37 north, range 14 east of the third principal meridian, in Cook county, to secure the payment of two promissory notes for $5000 each, executed by the said Bowen on the 9th day of June, 1871, payable to himself or order, one in one year and the other in two years from date, with interest at eight per cent per annum, and by him indorsed and delivered to Nathaniel F. Moore and James M. Phillips, being for part purchase money of the property described in the deed of trust.

On the 30th day of June, 1871, Benjamin F. Guyton executed a deed of trust to Clinton C. Clark, on the east $106\frac{2}{3}$ acres (or two-thirds) of the same quarter section, to secure certain promissory notes executed by him, payable in installments, in one, two and three years from that date, and amounting, in the aggregate, to $32,100.

On the 22d day of May, 1872, Bowen and Guyton sold and conveyed the entire quarter section to Henry E. Pickett, who assumed the payment of both the Bowen and Guyton notes so respectively secured by deeds of trust. Ira Holmes negotiated the sale, and paid whatever was paid to Bowen at the time; and, although the conveyance was to Pickett, he was, in fact, part owner of the land; and, afterwards, on the 4th day of June, 1872, Pickett and wife conveyed to him the undivided half of the quarter section, and he assumed the payment of $14,250 of the indebtedness so secured by the deeds of trust.

On the last of July or first of August, 1873, Pickett obtained a loan from the complainant, the International Bank of Chicago, of $5000, and pledged the Bowen notes, of which he had obtained possession, as collateral security for its payment; and that debt not having been paid, the present bill is filed to enforce the payment of the Bowen notes, by foreclosing the trust deed, with the view of appropriating the proceeds to the payment of the $5000 loan, and accruing interest, to Pickett, and, also, certain other indebtedness held by the complainant against Pickett, for which, it claims, the Bowen notes were also held as collateral security under a general verbal agreement.

Subsequent to the pledging of the Bowen notes, by Pickett, with the complainant, and about the 5th day of August, 1873, Pickett executed ten promissory notes of $5000 each, payable to his own order, with ten per cent interest, payable semi-annually, and indorsed by him, and, to secure their payment, executed a deed of trust on the undivided half of the quarter section owned by him and Ira Holmes, as before described, to Joseph Holmes, as trustee, and the notes, thus secured, he negotiated to the Manufacturers' National Bank, of which Ira Holmes was, at the time, president, and Joseph Holmes, cashier. These notes were, pursuant to negotiations previously had, and in view of which they had been taken by the Manufacturers' National Bank, sold to the People's Bank of Belleville, and are now held by the defendant, Fred. H. Pieper, as its representative. The Manufacturers' National Bank guaranteed the notes, for a commission of two per cent, but it has become bankrupt, and Pickett is also bankrupt.

It is claimed by the defendants that the Bowen notes had been paid before they were pledged by Pickett with the International Bank, and that the deed of trust executed by Bowen to Ketchum was thereby released and extinguished.

It appears, from the evidence, that when the Bowen note first due, matured, it was held by the State Savings Institution, and Pickett, not being ready to pay, obtained an extension for one year, by executing to the State Savings Institution his own note for $5000 payable in one year, and leaving the Bowen note as collateral security for its payment. At the end of the year, when his note matured, he gave the State Savings Institution his check for the amount due on the note, on the Manufacturers' National Bank, and directed that the Bowen note, his note and the check, be pinned together and all sent into the clearing house and it would be paid. The direction was observed, and they went through the clearing house to the Manufacturers' National Bank.

The Bowen note last due was presented, at its maturity, to Pickett by Ketchum, the trustee. Pickett drew a check on the Manufacturers' National Bank for the amount due on that

note, in favor of Ketchum, and also directed him to pin the note and check, and a release of the deed of trust, together, and send them through the clearing house and it would be paid. This direction was likewise observed, and the note, check, and release of the trust deed, also passed through the clearing house to the Manufacturers' National Bank.

If no other question were presented than whether these facts constituted a payment of the Bowen notes, we should have no difficulty in determining they were paid, and as a necessary consequence, that the deed of trust to Ketchum was extinguished before the deed of trust to Holmes to secure the $50,000 was executed.

But the point is made, by the complainant, that notwithstanding this may have been true in fact, the complainant had no notice of it, and that the parties interested in the payment of the notes, and the release of the deed of trust, by their representations and acts, induced it to believe, and those representing it did, in good faith, believe that the notes were unpaid, and that the deed of trust was still subsisting as a valid lien upon the land to secure their payment; and that upon the faith thereof it loaned to Pickett $5000 of its money,

The question here is not one of a renewal of paid notes and the revival of an extinguished security upon real estate; but did the defendants, by their representations and acts, cause the plaintiff to believe in the existence of that, upon the faith of which it loaned its money, which was, in fact, untrue?

It was said, in *Smith* v. *Newton,* 38 Ill. 235: "A much broader scope has been given to the doctrine of estoppels *in pais,* both in this country and in England, than formerly obtained, and have established that whenever an act is done, or a statement made by a party, which can not be contradicted or contravened without fraud on his part and injury to others whose conduct has been influenced by the act or admission, the character of an estoppel will attach to what would otherwise be mere matter of evidence, and it will become binding on a jury even in opposition to proof of a contrary nature."

So, also, it is said: "A man who, while alleging a fact to be

35—80TH ILL.

doubtful, or even asserting its existence, agrees to be bound whether it exists or not, will be as much precluded from relying on it subsequently as a defense to the contract, as if there had been a recital or stipulation expressly negativing that which he seeks to establish. Under these circumstances, the evidence is shut out, not because it is inconsistent with the deed, or false, but as being by the terms of the agreement irrelevant to the decision of the case before the court." 2 Smith's Leading Cases, p. 672, (11 Am. Ed.)

The loan by the International Bank to Pickett was made through Lowenthal, its president. He denies that he had any knowledge, when the loan was made, that the Bowen notes had been paid, or the deed of trust securing them released. There is no direct evidence contradicting him in this respect, and there are but two circumstances relied on by counsel for appellee as having that tendency: 1st, one of the notes was stamped thus: "Cook County National Bank, Chicago, paid June 16;" and Lowenthal, before making the loan, required Pickett to procure the consent, in writing, of Ira Holmes and Bowen, to an extension of time on the notes, which was indorsed on their faces, as follows:

"We, the undersigned, consent to the extension of the time of payment of the within note, to October 1st, 1873.

Signed,                              JAMES H. BOWEN,
                                     IRA HOLMES."

The words stamped on the note by the Cook County National Bank were erased, by having a pen drawn through them before it was presented to Lowenthal, and this, in connection with the fact that the note was presented as a valid subsisting note, we regard as sufficient to overcome any notice of payment that might otherwise have been furnished by the words stamped on the note. Being erased, the reasonable inference would be they had been placed there by mistake; and Pickett's possession was not, of itself, a circumstance to arouse suspicion that payment had been made.

It is true, if the notes had not been paid, it was not neces-

sary that Bowen and Holmes' consent to the extension of time should be indorsed on the notes, in order to render them valid as collateral security, but it would seem scarcely probable, had the design been to revive notes that had been extinguished, words, in some way showing that such was the object of the indorsement, would not have been used, and that there would not also have been an express reference to the trust deed, which it is hardly presumable persons of so much commercial experience would not have understood was released by the extinguishment of the debt for which it was security. We regard the indorsement, on the other hand, as perfectly consistent with the evidence of Lowenthal, and that it was placed there as a guaranty that the notes were not paid. If Lowenthal had been apprehensive that the notes had been paid, or that they were not what they purported to be, surely he might rely on those who, alone, were interested in seeing that they were taken up and canceled, when paid, for reliable assurances in that respect. If they were paid, these parties should, when applied to for an extension of the time of their payment, have so said. This extension could not be given, unless the notes were unpaid, and when it was given, therefore, it was virtually asserted the notes represented an existing debt; and if they did so, the deed of trust, which is but an incident to that debt, was, of course, unsatisfied.

When Pickett obtained the loan, he executed his promissory note, in which he expressly recited that the Bowen notes pledged for its payment were secured by the deed of trust; and it is scarcely probable that Holmes did not understand that his indorsement was required, as an assurance that he had, and would make, no defense to the deed of trust, so far as it affected his interest in the land. He did not pretend to undertake the liability of an indorser or guarantor, and there is no other purpose apparent for which we can understand he might have believed his signature was required. After the notes passed the clearing-house into his bank, they were used, with his consent, to raise money from Miller, Watson & Co., with whom they were deposited by Pickett as collateral security to

his note for $5000, with which money his bank was repaid the amount of Pickett's overdraft on it when the last of these notes was paid.

When this debt matured, Pickett testifies that he informed Holmes that he was going to deposit the notes with the complainant, to raise money, and requested him to give his consent in writing to the extension of time on the notes, which he did. Holmes does not deny that he knew the notes were being deposited with the complainant, to raise money, and, from all the circumstances, we infer that he must have known also that their chief value as collaterals consisted in the security supposed to exist for their payment.

The record of the trust deed, as well as the deed itself, was destroyed by fire—but the abstracts showed its existence; and Lowenthal says that he had the abstract examined before the loan was made. The release of Ketchum was not then put on record, but was retained, either by Holmes or his bank, so that any notice that it might have afforded of the payment of the notes was withheld.

If Holmes desired to protect his interest in the land against future liability on account of the Bowen notes, it was his duty, instead of encouraging and aiding in obtaining loans of money on them, to put the release on record, so that parties dealing in reference to them would have notice of their actual condition.

Our conclusion is, that Bowen, Pickett and Holmes are estopped from interposing the defense that the notes were paid. But this can only be so far as the $5000 loan is concerned. As to the other indebtedness in favor of the complainant, against Pickett, the evidence entirely fails to show that it was contracted on the faith of any representations or statements of Holmes or Bowen with regard to the Bowen notes; and in determining that the doctrine of estoppel is applicable to the case at all, we necessarily exclude the idea that there was a mutual agreement by which extinguished notes and a released security were revived.

It is, however, insisted that the People's Bank obtained the

$50,000 of Pickett's notes, and the deed of trust to secure their payment, having notice that the Bowen notes had been paid, and that the Ketchum trust deed was thereby discharged, and, without notice of any superior claim in the complainant, Pickett did not execute and deliver his notes and the deed of trust directly to the People's Bank. His transaction, he says, was either with Holmes or with his bank, and he explains that Holmes was the actor, and he supposed the money came from his bank. The People's Bank obtained the notes from the Manufacturers' National Bank. The notice it had was derived from the officers of that bank. These officers knew—certainly one of them, its president, knew—that the release of Ketchum was not placed on record, and of every fact which existed with regard to the deposit of the Bowen notes with the complainant, as collateral security for the loan by it to Pickett of $5000, and which we have held estopped him from setting up as a defense that the notes had been paid. As assignee, the People's Bank occupy no better position than would the Manufacturers' National Bank, were the controversy with it, instead of with the People's Bank. *Olds* v. *Cummings*, 31 Ill. 188; *Kleeman* v. *Frisbie*, 63 Ill. 482.

The decree of the court below is reversed and the cause remanded.

*Decree reversed.*