Reed, J.
This is a controversy over the title to real property in Georgetown, Clear Creek county, and in different forms of action, sometimes as De LaMar v. Hurd, Hurd v. De LaMar, Hurd v. Job C. McClellan, Hurd v. Catherine McClellan, and Catherine McClellan v. Hurd; the same subject matter has been before the courts and adjudicated so long, “ That the memory of man runneth not to the contrary.” It has in some shape been before the supreme *328 court, and some questions considered and adjudicated four different times. See 4 Colo. 442, (1878;) 11 Colo. 126; 13 Colo. 7, and 14 Colo. 213, (1890.)
Several questions are presented by the record and by arguments of respective counsel in regard to the original and derivative titles of the respective claimants, which, in our view of the case, it is unnecessary to determine. It is sufficient to say, in regard to the title, that whatever title De-LaMars had passed to and was merged in that of Erskine, and afterwards in that of Job C. McClellan.
On the 13th day of April, 1878, Erskine McClellan conveyed the property to his brother, Job C. McClellan. On the 17th day of May, 1878, Job C. McClellan, by deed, conveyed the property to Catherine McClellan. The deed, was delivered to her, by her retained unrecorded until the 22d dajr of June, 1885. The fact of the conveyance does not appear to have been known to others until the last date, when record was made of the deed and the title under it asserted by Catherine McClellan. On the 3d day of April, 1879, Job C. McClellan executed to Catherine McClellan, wife of his grantor Erskine McClellan, a full power of attorney, authorizing her to represent him in all matters pertaining to the property. From the date of the conveyance by her husband to Job C. McClellan, down to the last date named, she, with her husband, occupied the premises in controversy, and acted in all matters pertaining, as the agent of the ostensible owner, Job C.
In the year 1878, Fannie A. De LaMar commenced an action of unlawful detainer against plaintiff Hurd and others, before a justice of the peace in Clear Creek county. The answer of defendants showed that the question of title was involved, and the cause was removed into the county court of the same county ; by consent of parties was transferred to the district court of the same county; afterwards by change of venue the cause was removed to the district court of Lake county. While pending in that court Job C. McClellan was made a party. On the 27th of December, *329 1881, it appeal's a cross-complaint was filed by Hnrd, bj^ which the action was changed to ejectment; the other parties answered. The issues in ejectment were made up,— this became the principal action, and the one which was afterwards tried. In it was involved the entire title to the premises. The case was tried March 25-27, 1885, resulting in a judgment for Hurd (plaintiff in error), finding him to have been the owner since March, 1876, and awarding him damages for detention, use and occupation, in the sum of $4,442.50, the case having been determined and the finding and judgment having been entered May 14, 1885. During such litigation Catherine and Erskine McClellan employed counsel to represent them, participated in the proceedings', and Catherine, as the agent of Job C. by virtue of powers of' attorney from him, managed and directed the litigation, although having in her possession the conveyance from Job C., and having had it since about the date of its execution, April, 1879, such conveyance being only known to her grantor and herself. On the 22d of June, 1885, and after the entry of judgment in the action of ejectment in the county of Lake, she caused her deed to be recorded, assumed to be the owner, by virtue of the conveyance and by virtue of the original claims of title that were adjudicated against Job C. and herself in the action of ejectment, and also relying upon her long and continued possession of the premises and the statute of limitations. After such assumption of title, Catherine McClellan, after filing sundry affidavits to show her supposed status and relation to the property in controversy, appealed the case to the supreme court, herself paying the accumulated costs and expenses, amounting in the aggregate to over $3,000. Such appeal was dismissed for want of u proper abstract of the record and a remittitur issued to the district court. See Surd v. McClellan, 13 Colo. 7.
On the 20th of January, 1886, a writ of possession was is sued, served, and Hurd put in possession of the premises For some unexplained informality in the record the writ of possession was recalled, leaving Catherine in possession. It *330 is alleged and undisputed that the informality in the record was cured, but no subsequent writ of possession issuéd, and Catherine was left in the possession.
This appeal was taken from the order vacating and recalling the writ of possession, under the statute of 1885, allowing appeals from such order of court. The supposed title of Catherine McClellan, by reason of continued possession and the statute of limitations, can be very briefly disposed of. Possession to ripen into title must be open, notorious, continued, and adverse to all others. The facts show not a continuous possession of the claimant in her own right, but a broken possession. While the title remained with Erskine, and she was living with him as his wife, the possession is supposed to follow the title, and her possession cannot be presumed to have been adverse to her husband. After the conveyance from Erskine to Job C., and she became his agent, the possession was in Job C. and retained for him by her, in her representative capacity, and although her possession may have, at all times, been adverse to Hurd, such possession could not become a title as against him for want of continuity in the same right. No appeal was prosecuted from the judgment in ejectment in the district court of Lake county. The judgment was not vacated, and a new trial granted, and it remains a conclusive and final judgment.
“ The only modes known to examine such facts at common law are the granting of a new trial b}r the court where the issue was tried, or to which the record was properly returnable, or the award of a venire facias de novo by appellate court for some error of law that intervened in the proceedings.” Parsons v. Belford, 3 Pet. 443.
The only further question we find it necessary to determine is, whether by reason of the facts and premises, and her participation, as above stated, Catherine McClellan is concluded by the judgment and estopped to assert her title.
The due administration of the law and the interest of litigants require that there should be some end to litigation of this character. This litigation has now been running half *331 the ordinary life of litigants, and nearly the entire useful professional life of the lawyers. It should not he allowed to be reopened, and the same issues again tried, unless in- obedience to inexorable rules of law.
The leading case upon estoppel by an adjudication is that of Outram v. Morewood, 3 East 346, where it is said by Lord Ellenborough, C. J., in effect, if a verdict be found on any fact or title distinctly put in issue in an action of trespass, such verdict may be pleaded by way of an estoppel in another action between the same parties and their privies in respect of the same fact or title. See Taylor v. Needham, 2 Taunt. 279; 1 Greenlf’s Ev. 522 et seq.; Bigelow on Estop. 45, notes 2, 277; Miles v. Caldwell, 2 Wal. 26; Marsh v. Peet, 4 Rawle 288; Gardner v. Buckbee, 3 Cow. 120; Burt v. Sternburgh, 4 Cow. 559; Williams v. Hacher, 16 Colo. 113. The rule in these cases is, that a point once adjudicated by a court of competent jurisdiction may be relied upon as an estoppel in any subsequent suit, in the same or any other court, at law or chancery, where either party or the privies of either party allege anything inconsistent with it. Aurora City v. West, 7 Wal. 82; Beloit v. Morgan, 7 Wal. 619; Embury v. Connor, 3 N. Y. 522 and cases cited; White v. Coatsworth, 6 N. Y. 139; Smith v. Hemstreet, 54 N. Y. 644; 1 Phil. on Ev. 321.
That judgments are admissible in evidence between persons who are in privity with the parties to the former proceedings, see Estep et al. v. Hutchinson, 14 Sergt. & Rawle, 435; Marsh v. Peet, 4 Rawle 273; Case v. Reeve, 14 John, 81; Carver v. Jackson, 4 Pet. 85; Spaulding v. Goodspeed, 39 Me. 564.
In this ease there was a final and conclusive adjudication, affecting directly the estate and binding the rights of the parties, and such adjudication was binding and obligatory upon all persons claiming under either party litigant. Adams v. Baines, 17 Mass. 365; Jackson v. Stone, 13 John. 447.
Catherine McClellan was the grantee of the party against, whom the judgment was entered. She suppressed the knowl *332 edge of such fact, acting as the agent of her grantor under his power of attornejr, with full knowledge of all the proceedings ; she participated in, directed, and controlled the defense, and under all the authorities must be held to be bound by the judgment and estopped to assert a title she elected to conceal and declined to defend. In Thatcher et al. v. Grammon, 12 Mass. 267, it is said: “ No defense can be admitted which existed prior to the judgment; and for this sufficient reason, in addition to the sanctity of judgments of courts of record, that there would be no termination to suits if parties were permitted to lie by * * * and suffer a judgment to go against them, and then, upon a process instituted to enforce the judgment, to allege matters to impeach it which might have prevented the judgment, if the party had not been either grossly ignorant or designedly vexatious. If such a defense could be admitted against a first judgment it might also against a second, and against as many as might from time to time be obtained. * * * The judgment is, in all cases, considered conclusive evidence of the existence and justice of a demand, and unless voidable for error it cannot be impeached, except for matters going in discharge of it ex post facto.”
It follows that the court erred in vacating and recalling the writ of possession. The judgment being final it was the duty of the court to place the successful litigant in the possession of the property.
The judgment of the court in granting a nonsuit as to the defendant, Forbes, is affirmed. His connection with the property, as shown by the evidence, was not of such a character as to charge him for the detention of the property or for use and occupation. His relation to it seems to have been as agent or manager, to a certain extent, for the Mc-Clellans while they had the possession; there was on his part no assertion of a right of possession or of title to the realty. It follows that all the judgments and orders adjudging title and right to possession to be in Catherine McClellan, subsequent to the entry of judgment in ejectment against *333 Job O. McClellan and others, determined in the district court, May 14, 1885, are reversed. The two causes will be remitted to the district court for further proceedings in accordance with the views herein expressed.

Reversed.