## BROWN v. WILSON ET AL.

1. EQUITY—POSSESSION.

Where one out of possession of real estate can assert only an equitable title, he may have his equitable remedy.

2. JUDGMENTS—JURISDICTION—COLLATERAL ATTACK.

The judgment of a court of general jurisdiction is not void unless it appears from the record itself that the court in pronouncing it acted without jurisdiction. A judgment rendered without bringing the defendants into court is not, for this reason, void, but voidable only, unless the failure to obtain jurisdiction over them appears from the record and proceedings. Being regular upon the record, the judgment can only be avoided upon extraneous evidence.

21 309;
8a 96

21 309
12a 116
12a 175

21 309
27 549

21 309
28 417

21 309
33 508

3. EQUITY—LACHES.

The laches that will bar a recovery in a particular case depends to a large extent upon the character and nature of the circumstances surrounding the transaction. Where the subject-matter of the litigation is unpatented mining property, purely speculative in value, the necessity for prompt assertion of title has always been recognized.

4. SAME.

Where property has been developed by the courage and energy and at the expense of the defendant, courts will look with disfavor upon the claims of those who have lain idle while waiting the results of these developments, and will require not only clear proof of fraud, but prompt assertion of the plaintiff's rights.

5. SAME—ESTOPPEL.

Where a party by his negligence and laches has lost his right to impeach the validity of a judgment, another claiming under him is estopped by the judgment.

6. RES JUDICATA.

Where certain persons caused a company to institute an action, and others afterwards purchased bonds of the company at a heavy discount for the purpose of providing funds for carrying on that litigation, they are, for this reason, bound by the judgment in the action.

*Error to the District Court of Arapahoe County.*

TWO causes of action are stated in the complaint. In the first it is alleged that on June 23, 1883, plaintiff, Brown, was, and ever since that time has been, seized in fee and legally entitled to the possession of certain mining property in Park county, Colorado. This allegation is followed by a description of the property. Plaintiff avers that while so seized and possessed, the defendants, without right or title, entered into possession of the premises and ousted and ejected plaintiff therefrom, etc. The second cause of action is in the nature of a bill in equity to remove a cloud upon plaintiff's title upon the premises.

There is no dispute upon the facts, which, so far as the present controversy is concerned, may be stated in brief as follows :

The Great West Mining Company was the owner and in possession of the property on and before January 18 and 19,

1883, the property at the time being unpatented mining claims. Upon the dates mentioned two suits of attachment were brought against the company, and writs of attachment were duly levied on its property, real and personal, including the premises now in controversy. One of these suits was instituted by John T. Perkins, and the second by James Moynahan.

On the 15th day of February, 1883, and after the levy of these writs of attachment, The Great West Mining Company executed a deed of trust to one James M. Strickler, to secure the payment of a proposed issue of $50,000 in bonds. The bonds thus provided for were afterwards issued and a part thereof sold.

On or about the 24th of April following, judgments were entered in both the Perkins and Moynahan cases, in favor of the plaintiffs. These judgments aggregated something over $3,000. Executions having been duly issued upon these judgments, the property was levied upon and sold under such executions in September, 1883. At this sale the property was bid in by Gwynne and Moynahan, and certificates of purchase were executed by the sheriff.

At this time one Purmort was working the property as lessee of The Great West Mining Company. In November, 1883, Purmort was enjoined in a suit by Gwynne and Moynahan. The defendants in this suit were The Great West Mining Company as owners, and Purmort as lessee, and these facts were immediately made known to Kellogg and Whitaker, officers of The Great West Mining Company. After this time no work was done or attempted to be done by The Great West Mining Company for some years.

In June, 1884, sheriff's deeds were issued to Gwynne and Moynahan under their purchase. Upon receiving these deeds, the grantees took possession of the property as owners. They continued in possession and worked the same until December, 1884, when they sold the property to Alfred H. and Randall W. Wilson, for the sum of $8,194.

This amount was paid by the Wilsons, who were in turn admitted into the possession of the property.

In April, 1885, the Wilsons conveyed to The Woodmas of Alston Mining Company. Thereupon this company immediately entered into possession of the property, and continued in such possession to the time of the trial in the district court of the present action.

About this time one Bates claimed an interest in the property, and brought suit against the Wilsons to enforce his claim. In that suit a receiver was appointed. Thereafter another suit was brought by one Whitaker, a holder of some of the bonds secured by the Strickler trust deed. Both of these suits were decided in favor of the defendants in June, 1886. Afterwards a similar suit was brought by one Needham and others, in the United States circuit court for the district of Colorado, with like result.

It also appears that as early as April, 1882, The Great West Mining Company became indebted to one Duncan McBride in the sum of $3,000, and to secure this claim it executed a note for this amount and secured the same by deed of trust upon the property in controversy; that upon default in the payment of this claim the property was sold under foreclosure and bid in by McBride; that afterwards, the amount of the McBride judgment was paid by defendants.

Among other suits brought to set aside the judgments and sales made in the attachment suits instituted by Perkins and Moynahan was one by *The Great West Mining Company v. The Woodmas of Alston Mining Company et al.* In this suit a full hearing was had and judgment rendered in favor of the defendants. This judgment was reversed by this court and the case remanded. See 12 Colo. 46.

After this case reached the district court, a change of venue was taken to the district court of Arapahoe county, and a new trial had, the evidence taken at the previous trial being used, and much new evidence given. This trial resulted in a judgment in favor of defendants, and another appeal was

taken by The Great West Mining Company to this court. Upon this appeal it was determined that The Great West Mining Company had been guilty of such laches as precluded it from maintaining the action, and the judgment of the district court was accordingly affirmed. See *Great West Mining Company v. Woodmas of Alston Mining Company*, 14 Colo. 90. Upon the two appeals in this court four written opinions were filed. In these the facts are fully set forth, and also the law applicable to the case in its various phases as then presented.

Nothing was done in the Needham case during this time, but after the final decision of the *Great West Cases* in this court, that suit was revived and an amended complaint filed. To this complaint a demurrer was interposed and sustained, and the cause dismissed.

Brown, the plaintiff in the present action, derives his title as a purchaser at a sale made by Strickler under a decree of foreclosure upon the deed of trust to the latter. He sets up the irregularities occurring in the Perkins and Moynahan suits and the sales made thereunder. The only additional facts disclosed in this record are that pursuant to the decree of foreclosure, the property was sold to the plaintiff Brown, for the sum of $150, and that before the bringing of this suit patents had been obtained by the defendants from the United States for all the property in controversy.

The district court, upon the pleadings and evidence, found that the sales made as a result of the attachment suits might have been avoided by The Great West Mining Company if it had moved in time, but that this right had been lost by laches; that the sales were not absolutely void, but that the present defendants in error had a perfect record title to the property, as the liens of the attachments had priority over the lien of the Strickler trust deed; that no fraud had been shown to vitiate defendants' title. The complaint was accordingly dismissed. To reverse this judgment the plaintiff brings the case here upon error.

Mr. H. B. JOHNSON and Mr. J. M. WASHBURN, for plaintiff in error.

Mr. HUGH BUTLER, for defendants in error.

CHIEF JUSTICE HAYT delivered the opinion of the court.

The fee simple title to the property in controversy being in the defendants by patent from the United States government, the plaintiff cannot recover upon his first cause of action, unless he succeeds in establishing the second.

A recovery upon the second cause of action was denied by the district court for the reason that, in the opinion of that court, a lien was established against the property by the attachment proceedings having priority over the lien created by the trust deed. In this court objection is made to the sufficiency of the second cause of action, upon the ground that the plaintiff being out of possession cannot maintain the action under the code provision with reference to determining an adverse claim, estate or interest in the property. It has been held, however, by this court, after careful consideration, that where one out of possession can assert only an equitable title, he may have his equitable remedy. *Stock-Growers' Bank v. Newton*, 13 Colo. 245; *Mulock v. Wilson*, 19 Colo. 296.

In this suit, as in the previous ones, it is urged by plaintiff in error that the Perkins and Moynahan judgments were void because there was no proper service upon The Great West Mining Company. This question was, however, put at rest by the last opinion filed in the case. It is there said:

" As a rule, a judgment of a court of general jurisdiction is not void unless it appears from the record itself that the court in pronouncing it acted without jurisdiction. A judgment rendered without bringing the defendants into court is not for this reason void, but voidable only, unless the failure to obtain jurisdiction over them appears from the record.

" That this distinction has been kept constantly in mind

by this court is quite apparent from the qualification expressed in each instance in which the judgments are alluded to in the former opinions of this court as being 'absolute nullities' under certain conditions.

"The proceedings being regular upon the record, the judgments can only be avoided upon extraneous evidence." *G. W. M. Co. v. W. of A. M. Co.*, 14 Colo. 90, pp. 103–104. And it was held that plaintiff had been guilty of such laches as precluded it from introducing such evidence.

It is to be borne in mind that the record shows personal service in the one case and appearance by attorney in the other, and as the same evidence upon the question of the character of the judgments is now before us as in the former case, the conclusion in this case, as in that, must be that the judgments are not absolutely void. This result necessarily follows, irrespective of any question as to whether or not the former decision is *res adjudicata* in this case.

Has the present plaintiff the right to contest these judgments rendered against his grantor, the grantor itself having forfeited and lost the right by reason of its laches? In the *Great West Case* the plaintiff was shown to have had notice of the fraud complained of for a little more than two years before instituting suit, and it was held for this reason that the courts should refuse relief. The laches that will bar a recovery in a particular case depend to a large extent upon the character and nature of the circumstances surrounding the transaction. Where the subject-matter of the litigation is unpatented mining property, purely speculative in value, the necessity for prompt assertion of title has always been recognized by the English and American courts. See *G. W. M. Co. v. W. of A. M. Co.*, *supra*, and cases cited. In this case both the trustee and the bondholders, as it is claimed, were chargeable with laches, with full knowledge of all the facts, which should preclude a recovery.

From the record it appears that one McBride commenced a suit as early as 1884, to subject the property to his claim. In that suit, Strickler, the trustee for the bondholders, was

made a party, and in his answer admitted that McBride had a prior lien and consented to a decree for complainant. 33 Fed. Rep. 402. And this constitutes one of the sources of title under which defendants now hold. Nothing more was attempted by the trustee until 1892, when he commenced a foreclosure suit upon his trust deed. In this suit he obtained a decree of foreclosure, but as the deed gave him power to sell, the suit was unnecessary. During all these years the interest upon the bonds was in default, and by the terms of the trust deed the trustee was authorized to sell for any failure to pay the interest as it fell due, and yet for eight years he allowed the matter to rest. During this time the defendants defended many suits involving the title to the property, procured patents from the United States, and by an expenditure made by them and their grantors the mine was reclaimed from its worthless condition and put upon a paying basis.

At one time a block of these bonds of a par value of $10,000 was sold for about $3,000, and the money used to prosecute the suit instituted by The Great West Mining Company against The Woodmas of Alston Mining Company. The facts upon which plaintiff now relies to impeach the judgment and sales were well known to all parties as early as 1884, and in 1886, Whitaker brought suit on behalf of himself and other bondholders, setting up these facts, and made application for an injunction against the defendants and for the appointment of a receiver. In these applications he was defeated, and thereupon abandoned the suit.

In the same year a similar suit was brought by William Needham and other bondholders, in the circuit court of the United States in and for the district of Colorado, against the defendants. In this suit the issuance of bonds aggregating the sum of $50,000 was alleged to have been made by The Great West Mining Company, on or about the 15th day of February, 1883; that the same were secured by trust deed upon the property in controversy; that said Needham and others were the owners and holders of said bonds. It was further alleged that the judgments rendered in favor of

Gwynne and Moynahan and the sales made thereunder were fraudulent and void. The plaintiffs prayed that such judgments and sales be declared fraudulent and void, and for an accounting. Various proceedings were had in that suit, but the suit was finally dismissed some time in 1891.

It is alleged, however, that the bondholders could not be guilty of laches until after the principal of the bonds fell due, and that laches cannot be imputed to them unless they failed to act within a reasonable time thereafter. We do not think this contention is well founded when applied to the facts in this case. Defendants have a perfect record title to the property. No fraud is shown upon their part. The title dated back and took priority to the issuance of the bonds in question. As we have seen, the property conveyed was unpatented mining property, purely speculative in value. The purchasers made the property valuable as the result of their hazard and enterprise, and as soon as the value had been established their title was contested to an extent that is seldom paralleled. For ten years they have been called upon to defend their title against a multitude of claimants, attracted by the value given the property as the result of the enterprise and expenditure of defendants and their grantors, and eventually procured patents to the property from the United States. The litigation was notorious, and the facts now relied upon must have been within the knowledge of all the parties. Under these circumstances, it would be unjust and inequitable to allow the plaintiff to maintain this action.

In the original suit brought by The Great West Mining Company, a period of delay of less than two years was held sufficient to bar a recovery. Under the most favorable view of the evidence, the plaintiff in this suit had been guilty of a delay of six years, and, under a view which the evidence warrants, he has been guilty of delay for a much longer time.

The *Great West Case* was cited with approval in the recent case of *Johnston v. Standard Mining Company*, 148 U. S. 360, and in speaking of the necessity of diligence in actions of this character involving the title to mines where the property

has been developed and its value established by the enterprise of others, the court says:

"Under such circumstances, where property has been developed by the courage and energy and at the expense of the defendants, courts will look with disfavor upon the claims of those who have lain idle while awaiting the results of this development, and will require not only clear proof of fraud, but prompt assertion of plaintiff's rights."

The delay that barred a recovery in that case was trivial compared with that in this case. In fact, a stronger case for the interposition of the doctrine of equitable laches can seldom be found.

The judgment of the district court will be affirmed.

*Affirmed.*

### OPINION UPON REHEARING.

PER CURIAM. Although the argument of senior counsel in this case in support of the petition for rehearing is not characterized by that courtesy which always should, and to the credit of the bar of this state be it said has, with rare exceptions, characterized the conduct and arguments of members of this bar, the prayer of the petitioner was granted in order that the court might review the record for the purpose of ascertaining if any injustice had been done plaintiff in error by the former opinion of this court.

The controversy over this property has been waged for a period of more than ten years, and has been reviewed by this court upon several occasions. To restate the facts would be a work of supererogation. Every fact bearing upon the rights of the parties appearing from the pleadings, or which the evidence tends to establish, will be found stated in some one or more of the opinions or statements of fact preceding the various opinions which have been heretofore announced, and we shall not do more than refer to the cases with the volumes and pages where the same may be found. *G. W. M. Co. v. W. of A. M. Co. et al.*, 12 Colo. 46; 12 Colo. 55; 14 Colo. 90; 14 Colo. 98.

It is claimed for the first time upon this rehearing that the Wilsons had implied notice at the time of their purchase of the true character of the service in the Purmort case and appearance by an unauthorized attorney in the Moynahan case.   The argument in this behalf is based upon notice to Bates from Gwynne, communicated, as it is said, to Bates in his professional capacity as attorney, it having been adjudicated in another action that the transaction between Bates and the Wilsons constituted them mining partners with reference to this property.   This claim cannot be sustained, as Bates was acting as attorney for Gwynne at the time he received notice of the character of the judgments and sales, and before he was engaged by the Wilsons.   If it be conceded that Bates had information as claimed, there is no evidence that he ever communicated such information to the Wilsons, and it would have been of doubtful professional propriety on his part to have done so.   Under these circumstances, notice cannot be imputed to the Wilsons.   Moreover, there is nothing before this court in this case to establish a partnership relation between Bates and the Wilsons.   Wade on Notice, sec. 692; *McCormick v. Wheeler et al.*, 36 Ill. 114.

Counsel contend that there is an irreconcilable conflict between the following statements, the first appearing in the opinion of Mr. Justice Gerry, at page 49 of 12 Colorado, and the other in the opinion recently filed by this court, to wit:

" The mining property described in the compliant, and the subject-matter of this suit, has been worked by the appellees, and a large amount of ore extracted therefrom, and they have derived in profits an amount largely in excess of the amount of the judgments in question."

" The purchasers made the property valuable as the result of their hazard and enterprise, and as soon as the value had been established, their title was contested to an extent that is seldom paralleled."

The two statements are entirely consistent, and both are supported by the record.   It is undisputed, and indisputable by the record, that the mines were being worked at a loss at

the time of the attachment levies. It is equally certain that afterwards they were made valuable. If this change was not brought about by the expenditure and hazard of plaintiffs and their grantors, who did put the properties upon a paying basis?

It is said that the suit instituted by the men employed at the mine was a friendly suit, set on foot at the instance of the company; that this suit was afterwards turned into a hostile suit, and that the court has never alluded to this fact. In this statement counsel is in error as to the court. See page 93 of the opinion in 14 Colorado. In addition to what is there said as to the effect of that judgment, the suit never was other than a hostile suit, the suggestion made by Kellogg being for the purpose of giving the men an opportunity to place a first lien upon the property before Moynahan could institute suit. The men did commence suit and caused an attachment to be levied upon the property prior to the lien of the trust deed, and the title secured under the attachment sales antedates that obtained by the proceedings and sales under the trust deed. The suit was instituted as a hostile suit against the company, and was maintained and prosecuted to final judgment as such.

It is claimed that under the decision in *Raynolds v. Ray et al.*, 12 Colo. 108, no attachment lien was ever perfected, for the reason that no service was had upon the defendant company in either the Perkins or Moynahan suits. The record shows personal service in one case and appearance in the other; and it has been decided, as the result of protracted litigation, that The Great West Mining Company by its negligence and laches lost its right to impeach the validity of the judgments by extraneous evidence. Plaintiff in error claims under the Great West title, and is estopped by that judgment. Bigelow on Estoppel, 587; *Wood v. Seely et al.*, 32 N. Y. 105; *Parker v. Crittenden et al.*, 37 Conn. 148; *The International Bank v. Bowen et al.*, 80 Ill. 541.

The Purmort and Moynahan suits were instituted nearly a month before the Strickler trust deed was executed. Strick-

ler knew at the time he accepted the trust deed that there were prior liens by attachment upon this property, and, if he had information that the service was incomplete in one or both of the cases, he knew that under the law the service might be perfected or an appearance entered by the defendants, and that the same could be followed by a valid judgment, which would relate back to the levy of attachment, and convert the same into a valid lien. *Raynolds v. Ray et al., supra.*

Aside from this, it is shown that the present suit is being prosecuted in the interest of Whitaker, Washburn, Griffith, Pomeroy and others, who were active in the prosecution of the suits instituted for the same purpose by The Great West Mining Company. It is further shown that the bonds secured by the trust deed to Strickler were sold, in part at least, for the purpose of procuring money for the purpose of prosecuting that suit. This is shown by the evidence of the witness Whitaker, who, upon being interrogated as to the reason why ten thousand dollars of these bonds were sold for the sum of three thousand dollars, said: Q. "Par?" A. "Oh, no! They got bonds 51 to 90 inclusive, for three thousand dollars; as this money was to go into the litigation, of course, we could not sell them at par."

The evidence leaves no doubt that Whitaker, Purmort, Washburn and Griffith caused the Great West suit to be instituted, and that the bondholders who purchased after that time purchased at a heavy discount for the purpose of providing funds for carrying on that litigation, and are for this reason bound by that judgment. *Hurd et al. v. McClellan et al.*, 1 Colo. App. 327; affirmed *ante*, p. 197; 1 Herman on Estoppel and Res Judicata, secs. 156 and 186.

As we have said, the title of defendants in error relates back and takes effect from the time of the levy of the writs of attachment. It antedates the trust deed; hence the decisions that have been cited to show that the record of the trust deed is notice to subsequent purchasers and incumbrancers are not applicable. And cases in reference to forged instru-

ments, like *Meley v. Collins*, 41. Cal. 663, are not in point, for the manifest reason that the title set up by the Great West Company to the properties has been conclusively adjudged against that company in favor of the Wilsons and The Woodmas of Alston Mining Company.

For these reasons, in addition to those given upon the former opinion, the judgment of affirmance must be adhered to.

*Affirmed.*