## BACA ET AL. v. WOOTTON ET AL.

1. QUIETING TITLE.
A defendant in possession of real estate may, upon cross complaint and competent proof, have his title quieted as against the plaintiff.  The nature of the possession is unimportant.
2. SAME—QUANTUM OF PROOF.
The quantum of proof necessary to establish title to real estate by parol gift varies with the situation and the time which has elapsed since the gift was made, during which the holders of the apparent legal title have slept on their rights.

*Appeal from the District Court of Pueblo County.*

Mr. A. W. ARCHIBALD, for appellants.

Mr. JOHN A. GORDON, for appellees.

BISSELL, J., delivered the opinion of the court.

Felipe Baca preëmpted some government land in the vicinity of Trinidad about 1870.  The title thus initiated ripened into a fee by the issue of a government patent some-time subsequent to his death, which occurred in April, 1874. At this time Trinidad was a straggling village of a few hundred people, largely made up of a Spanish speaking race. One of these settlers was Juan Antonio Garcia, who came up from New Mexico about the year 1870.  He was evidently a laborer, and at various times worked for his more prosperous countryman, Felipe.  He settled in the vicinity of Trinidad, and first occupied some log cabins which the testimony

describes as located in the neighborhood of the gas works.
After he had been there some little time, Felipe Baca put
him in possession of a lot, which is the subject-matter of the
present controversy.  The whole suit depends on the legal
character of this transaction, and the rights, if any, enuring
to Garcia and the subsequent grantees who were the defend-
ants in the present suit.  After Felipe's demise, there were
left surviving him his widow and several children.  The
property descended to his heirs under the Colorado statutes,
whereby the widow became the owner of one half and the
children of their proportionate share of the remainder, which
was divided by reason of their numbers into eighteenths.
The entire title to this lot ultimately vested in three,—Luis,
Facundo, and Rosa,—who brought this action against Woot-
ton, Firth and Brigham, for partition.  Taking into consid-
eration the allegations of the complaint, and the proofs which
the plaintiffs offered, it was a singularly conceived suit.  It
was their contention that the entire title was in them by
virtue of their heirship, and the purchase from their coheirs,
and the title purporting to be held by Wootton and Brigham
was acquired by a conveyance from Garcia, who never had
any title at all.  Firth held a mortgage on the property, and
his right was dependent on the establishment of Garcia's
claims, and the claims of Garcia's grantees.  Just exactly
how partition could be enforced against persons without
interest it is difficult to apprehend.  There was an allegation
of a claim by the defendants of some estate or interest in the
premises.  How parties out of possession, holding by a legal
title, and having an absolute right to sue at law, could main-
tain such a suit against these defendants, is not clear.  Pass-
ing by this difficulty, the defendants denied all the various
allegations of the complaint, and set up by way of defense,
and also by way of cross complaint, a title in Garcia, coming
by mesne conveyances to the present defendants ; stated the
claims of the plaintiffs, and prayed a judgment establishing
their title.  This will now be stated.  It will assume the
form outlined by the defendants' witnesses, since we shall

concur in the judgment of the trial court. No question of law is presented which requires any attention, and the whole opinion will be virtually nothing more than a general statement of the case made by the proofs as we accept them.

Preliminarily, we suggest the appellants insist the judgment is wrong because the defendants were not so situated with respect to the title and the property as to have the right to maintain their cross bill, which was in the nature of a bill *quia timet.* This matter is easily disposed of. The interpretation put on our statute by the supreme court settles this matter adversely to the appellants. Under section 255 of the code, any person in possession of property may bring an action against anybody who claims an interest adverse to him in order to determine the status of this adverse claim. The nature of the possession is wholly unimportant, and the question of title does not seem to enter into the prerequisites of the right to maintain the suit. If the party is in possession, he may bring the action. If a party has been made defendant in a suit, concerning the same property, and of a sort which permits a cross action, there seems to be no good reason why, by way of cross complaint, if in no other way, the matter may not be stated and the appropriate relief prayed. *Stockgrowers' Bank v. Newton,* 13 Colo. 245; *Phillippi v. Leet,* 19 Colo. 246; *Mulock v. Wilson,* 19 Colo. 296; *Brown v. Wilson et al.,* 21 Colo. 309.

In any event, we do not regard the appellants as in a position to complain of the judgment quieting the defendants' title when they were found to have no title or interest in the property. It was adjudged to belong to the defendants, and they are unharmed by the entry. Should the judgment appear to affect the rights of other persons, who are not parties to the suit, and the judgment is a cloud upon their title, they would of course be unaffected by it, and in the proper way could remove it. There is some stress laid on the necessity for a full proof of a parol gift, in order to establish a title as against the legal holder. This is conceded, though the extent and character of that proof varies with the situa-

tion of the suit, the time which has elapsed since the gift was made, and during which the holders of the apparent legal title have slept on their rights. Slight proof would sustain a gift under the circumstances of the present case, even though it might not suffice if the action had been brought by Baca in his lifetime, or by the heirs directly after his death and shortly subsequent to the inception of the title. Waterman on Specific Performance, secs. 284, 291; *Allison v. Burns*, 107 Penn. 50; *Haines v. Haines*, 6 Md. 435.

We will now recur to the matters preceding the devolution of the title on the heirs of Felipe Baca. In 1871 Baca offered to give Garcia a lot on which to build a home. Together with other parties, they went to the premises in dispute, and the land was pointed out and the lot marked by stones put at the four corners, and the lines defined by a furrow plowed by Garcia under Baca's direction with a team and a plow which he furnished. This transaction is testified to by several witnesses, and if their story is to be believed, occurred in 1871 in about that way. Another witness was produced, who testified to several declarations made by Baca to the effect that he had given the lot to Garcia, who was then in possession of it. Garcia built a *jacal* on the premises in the usual Mexican way and went to living on it with his wife, and therein reared some ten or a dozen children. The evidence respecting this particular transaction is nowhere disputed. Not a witness was produced who denied it, nor one who could in any manner controvert it, except by indirect and circumstantial testimony respecting the place where Garcia lived and the details of an attempted settlement of the controversy years afterwards between the heirs and Garcia. We concede there is considerable testimony which tends to cast doubt on the locus of the lot on which Garcia lived, and the time the *jacals* were built which he occupied later in the eighties, when the dispute first arose between him and the heirs concerning the title. Of course, the appellants insist the whole story of the gift is a fabrication and the court is bound so to conclude, because if they

VOL. VIII—7

accept the testimony of the witnesses as to the place where Garcia lived for so many years, his testimony about the gift cannot be true. There are many reasons which cause us to decline to accede to the argument or reverse the case on this hypothesis. It is true the case was tried practically on depositions, and, under the rule announced by the supreme court, we are bound to weigh and sift the evidence to reach a conclusion about it. This we have done totally unaided by the abstract. That book was practically worthless as a basis on which to form an opinion respecting the character and weight of the testimony. It was an imperfect and incomplete statement of the evidence, and was filled up with running commentaries and arguments based on the character of the testimony. Where testimony is to be reviewed and the opinion of this court is to be made up on it, all of it ought to be printed, that we may read it in its entirety, and have before us the exact basis on which the court formed its conclusions. We do not believe we were obligated to read the bill of exceptions as we did, and we might readily have affirmed the judgment without much knowledge of the actual testimony, because of the appellant's failure to print it in convenient form for our examination. According to the record, this case has really been twice tried. Felix Baca, another heir, brought a suit in Las Animas county, where the witnesses lived, and before the judge of that district, who knew the parties and their witnesses. Garcia's title was established, and the claim of the heir, Felix, was found not to be well based. Thereupon the other heirs bring this suit, and it is tried before another judge in another district, and he reaches the same identical conclusion. It would be a vigorous and somewhat opinionated matter for this court, on the examination of the same testimony, to disagree with two trial judges who heard, sifted and weighed the testimony, and therein reached a conclusion. This is of very great weight with us. But aside from this consideration, we cannot disturb the judgment without an absolute, satisfactory and firm fixed conviction that the witnesses who

testified to the gift fabricated their story and devised a
fraudulent scheme to wrest a lot of little value from the
heirs of Felipe Baca. Another consideration which most
strongly compels this result is the lapse of time since the
inception of the title. Garcia went on the lot in 1871, and
lived there until he sold out to the present defendants in
1888, which was a period of seventeen years. Three years
of it passed while Felipe lived. The estate devolved on the
heirs in 1874. They took no steps to recover the property
or interfere with Garcia's possession for ten or fifteen years
after the title had passed to them by the death of Felipe.
Some negotiations were had in the later eighties between
them and Garcia with reference to the title which had never
been evidenced by a deed. This arose from the circumstance
that the patent was not issued by the government until after
Felipe's death, and although according to the testimony of
some of the witnesses, he had promised to make a deed when
the patent arrived, the deed was never made. Of course, it
is possible this might be explained by the little value which
the property possessed in the seventies and early eighties, and
the desire to obtain possession of it may not have arisen
until, by the growth of the city of Trinidad, it had become
valuable. Whatever may have been the motive, we cannot
escape the force of the lapse of time. Undoubtedly, since
the eighties, according to the testimony of all the witnesses,
and since 1871, as we accept the proof, Garcia lived on the
property. This occupancy should not have been permitted
by the original owner or by his heirs to continue undisturbed
if they intended to assert a title against the occupant. The
possession was an adverse one. The lapse of time under a
claim of title might have ripened into an absolute title in
Garcia's favor. His title might possibly have been good
regardless of the donation which he alleged and which the
court found was made. Parties cannot be permitted to lie
by and permit rights, of however little actual value, to be
acquired, and subsequently sold and transferred, and then
insist, after the elapse of years, that the proof of the defend-

ant is inadequate. Courts must not take the testimony of witnesses as to the place where the claimant lived in opposition to the positive testimony of the transfer. Many of these witnesses who testified as to the spot where Garcia's *jacal* was in the seventies, were children at the time, and presumably would not have charged their memory particularly with such matters. We confess there are some positive witnesses of mature years who gave evidence that Garcia's lot was on the north side of Main street instead of on the south. This cannot be reconciled with the evidence which the defendants offered, and it is one of those cases of hopeless conflict incapable of being explained and harmonized except on one hypothesis, and that is that the witnesses with respect to location may be mistaken. We must either take this course, or conclude that the people who were so vitally concerned with the matter, whose rights were directly involved and whose home had been, according to their statements, on the premises for seventeen years, did not know where they lived or conceived a lie to defraud the heirs. We do not feel compelled to reach this conclusion. We prefer to take the findings of the court and accept his decision about the facts and decline to disturb the judgment, because we are unable to conclude the judge was so greatly mistaken as to warrant us in disturbing his judgment. We have entered into no discussion respecting the value of the improvements, for we do not regard this matter as of very grave importance. Of course, a Mexican *jacal* is not of great value. It was a home for Garcia for many years, in which he reared a family. The value of the improvements which shall be a sufficient consideration to uphold a parol gift are scarcely determinable in dollars and cents. The value is a relative matter. What would be adequate in a city, where the lot was of large value, would be vastly different from what would be essential to the gift of a lot when Trinidad was nothing but government land, occupied by a few straggling settlers who were struggling in a new country to make themselves a living and a home. That Trinidad has grown and this lot become of

some worth is beside the question. What we must consider is the situation when the gift was executed and the improvement made. The improvement was an ample consideration under the circumstances then existing, and as the court has concluded Garcia's title was good and his transfer to the defendants valid and effectual, it vested them with a title as against the heirs of Felipe Baca who brought this suit.

We therefore hold there is no error in the record which requires us to reverse the judgment, and we accept it as an apparently just settlement of the dispute between these parties. It will accordingly be affirmed.

*Affirmed.*