[No. 5277.]
[No. 2908 C. A.]

CONSOLIDATED PLASTER COMPANY v. WILD.

1. Quieting Title—Corporation—Possession Through Officer—
   Statutory Construction.

A director or manager of a corporation cannot acquire a hostile possession of its property, of which he is in charge and control as such manager, so as to prevent it from maintaining an action to quiet title under Mills' Ann. Code, § 255, which provides that an action may be brought by any person in possession by himself or his tenant of real property against any person who claims an estate therein adverse to him,· for the purpose of determining such adverse claim.—P. 208.

2. Same—Equitable Title.

Where the title claimed by plaintiff corporation was purely equitable, being based upon an oral contract between it and defendant, who was one of its directors, it had a right, although out of possession, to maintain an action under Mills' Ann. Code, § 255, to quiet its title.—P. 208. ·

*Error to the District Court of Larimer County.*
*Hon. Christian A. Bennett, Judge.*

Action by The Consolidated Plaster Company against Alfred Wild. From a judgment for defendant, plaintiff brings error.     *Reversed.*

Mr. JOHN R. DIXON and Mr. L. R. RHOADES, for plaintiff in error.

Mr. HUGH BUTLER and Mr. F. J. ANNIS, for defendant in error.

Mr. JUSTICE GODDARD delivered the opinion of the court:

The plaintiff in error, The Consolidated Plaster Company, a corporation, instituted this action against Alfred Wild, the defendant in error, to establish its ownership of, and its right to the exclusive possession and enjoyment of, a certain leasehold estate and interest in certain described real estate, and in and to a

certain gypsum mill, known and designated in the record as the New Buckhorn Mill, under and by virtue of the terms of a written and oral lease. Upon the conclusion of plaintiff's testimony the trial court, upon defendant's motion, dismissed the action, upon the ground that plaintiff had not shown that it was in possession of the premises at the time of the institution of the proceedings. The merits of the controversy between the parties were not considered by the trial court, and it is conceded by counsel for the respective parties that the only question presented for our consideration and determination by this record is, whether the court erred in sustaining the motion of defendant to dismiss the action upon the ground stated. The facts pertinent to the inquiry, as they appear from the pleadings and testimony, are, in brief, as follows:

On the 11th day of October, 1892, the defendant was the owner in fee of certain premises, situated near Wild Spur, in Larimer county, on which there was a large and valuable deposit of gypsum rock, upon which at the time was a gypsum mill, referred to in the record as the Old Buckhorn Mill. On that date he executed to the plaintiff a written lease for said premises, together with the improvements thereon, for the period of twenty years from that date, in consideration of certain royalties to be paid as rental. Early in 1894 this mill, proving inadequate for the purposes of the company, was superseded by what is designated in the pleadings and evidence as the New Buckhorn Mill. The machinery placed in the New Buckhorn Mill was purchased by the defendant at an execution sale, and removed from the city of Denver by the plaintiff to Wild Spur, pursuant to an oral agreement between the plaintiff company and the defendant. By this agreement it was arranged that defendant should purchase

the machinery at an execution sale, and that the company should waive its right to retain the same in Denver, under an existing lease held by it thereon, and should have the machinery transported to Wild Spur and set up, and should erect thereover a suitable mill building, and should also cause to be constructed thereto a spur connecting the same with the railroad, at its own expense, in consideration of which the company was to have the use of the new mill so erected for the remainder of the period mentioned in the written lease. This agreement was fully carried out by the plaintiff. Plaintiff alleges that such removal and erection of the new mill, and construction of the railroad switch, cost it over $3,000.00; and that it had, for a period of eight years before the commencement of this action, been in the continuous and unchallenged use and occupation of the new mill, and during all of said time paid all taxes and insurance thereon, as well as on all the rest of the leased property. At all times subsequent to the 11th day of October, 1892, and until this action was instituted, in December, 1902, the defendant Wild was, by appointment of the board of directors, the manager of the plaintiff company, and as such was placed in charge and continuously kept in charge of said property and the business of the company. The defendant was an active promoter, and one of the organizers of the plaintiff company, an original stockholder, and also a director and vice-president, and participated in all its transactions, and during the ten years the company operated the property was its manager in charge, and during that period received the stipulated royalties on the product manufactured from the material used from his land. On the 9th day of October, 1902, he addressed a communication to the secretary and treasurer of the

plaintiff company, wherein he claimed that the company was organized for an unlawful purpose, and because of such unlawful organization, the written lease, together with all claim of the plaintiff to, or connection with, said land and the New Buckhorn Mill, was void, and that he was no longer bound thereby, and announced his intention of severing his relationship with plaintiff, to hold possession of the said mill and property, and to conduct the business theretofore carried on by plaintiff, through him as manager, for his private and individual use and benefit. On November 11, 1902, in a communication addressed to the president of the company, he stated he had resumed possession in his own right of the gypsum mill and of the gypsum quarry or mine, together with all appurtenances, with the intent to use the property exclusively for his own use and benefit, and on the same date mailed to some of the officers of the plaintiff company and to its patrons the following printed notice:

"NOTICE.

"Notice is hereby given that the Buckhorn Mill, at Loveland, Colorado, which has heretofore been operated under a lease by The Consolidated Plaster Company—the said lease having been terminated—will hereafter be operated and controlled by the undersigned, who is the owner of said mill and the gypsum quarry by which it is supplied.

"All orders received by The Consolidated Plaster Company after the 11th instant cannot be filled at the Buckhorn Mill. Such orders, if repeated to the undersigned, will be filled promptly at the same rates as before.

(Signed)    "ALFRED WILD,

"Owner and Manager."

The defendant has, ever since the 11th day of November, 1902, ignored plaintiff's rights, and carried on the business for his private use and benefit.

1. In its complaint the plaintiff, *inter alia,* alleged that it was in possession of the property, and we will, therefore, assume, with counsel for defendant, that the suit was professedly brought under section 255 of the code, which provides that:

"An action may be brought by any person in possession by himself or his tenant of real property against any person who claims an estate therein adverse to him, for the purpose of determining such adverse claim, estate or interest."

On the trial plaintiff's contention was that it did have possession, at the time of the institution of the suit, sufficient to maintain the action under this provision of the code. It is, in substance, that defendant, being a director of the company and its duly appointed and authorized manager, and having in such capacities obtained and retained possession of the property for plaintiff, that so long as he continues to be such a director and manager, his possession is the possession of the company; that while he holds these fiduciary relations to the company he cannot, by his declarations and acts, acquire possession adverse to it. The defendant contends that, although he occupied the dual position of director and manager, yet being the owner of the property and landlord of the plaintiff, even if the plaintiff was a lawful corporation and the lease was a lawful lease, that he had the power, if not the right, to resume the possession of the property in his own right and adverse to the plaintiff.

In *Seymour v. Slide & Spur Gold Mines,* 153 U. S. 523, it is said:

"One who holds possession of real estate as manager for or under another cannot dispute that

other's title. *Johnson v. Baytup,* 3 Ad. & El. 188;
*Phelan v. Kelley,* 25 Wend. 389, 393. The estoppel
is like to that which arises in the case of landlord and
tenant, and comes within the scope of the general
rule that an agent in possession cannot deny the title
of his principal.''

*A fortiori* should he be estopped to deny his
principal's possession when he attempts, without
right, to usurp such possession. In *Hoffman v.
Reichert et al.,* 147 Ill. 274, 278, in a well-reasoned
opinion, it is held that a director and treasurer of a
corporation cannot acquire hostile possession of its
property until he resigns as such officer and notifies
the company of such resignation. Justice Craig,
speaking for the court, said:

''As we understand the record, the possession
of the mine never passed out of the Freeburg Coal
Company. At the time the mine took fire, in 1884,
it had been in the possession and occupancy of the
coal company for several years, and that possession
was never abandoned or surrendered to any person.
* * * At that time Hoffman was still a director
and treasurer of the coal company, and whatever he
and the president of the company did in resuming the
possession of the property, in the absence of any act
or declaration to the contrary, it will be presumed
they did for and on behalf of the company, and that
the possession thus acquired was the possession of
the coal company. * * * Whatever Hoffman
did in repairing the mine and placing it in condi-
tion so that it could be successfully operated, must
be regarded as having been done for and on behalf
of the coal company. * * * If Hoffman, before
taking possession of the property, had resigned as
director and treasurer, and notified the company that
he would no longer act for it, a different question
would be presented. * * * But he had no right

to avail of his position as an officer in the corporation to obtain possession of the corporate property, and then use the advantage thus gained for his own private interest. There was a trust relation existing between him and the corporation. He was a trustee, and the possession he acquired was that of the *cestui que trust*. The possession of the mine, therefore, held by Hoffman, was the possession of the corporation.''

Under the doctrine announced in the foregoing cases, it was not within the power of the defendant, while director or manager of the company, to acquire a hostile possession of its property. It, therefore, follows that plaintiff was not divested of its possession by the acts of the defendant, but the possession held by him continued to be the possession of the company up to and at the time of the commencement of this action.

2. Even if the contention of defendant could prevail, and it could be said that he, as a matter of fact, did oust plaintiff from possession of the property, nevertheless it had the right to maintain the action as to the New Buckhorn Mill, the title claimed thereto being purely equitable and based upon the oral contract above mentioned, and the full and complete performance of its terms by the plaintiff, as shown by the uncontradicted evidence.

It is well established, upon principle and authority, that a party out of possession may maintain an action, under section 255 of the code, to quiet his title to property under such circumstances.—*Stock-Growers' Bank v. Newton*, 13 Colo. 245; *Brown v. Wilson*, 21 Colo. 309; 3 Pomeroy's Equity Jurisprudence, §§ 1398, 1399, note 4, wherein the learned author says:

''When the estate or interest to be protected is equitable, the jurisdiction should be exercised

whether the plaintiff is in or out of possession, for under these circumstances legal remedies are not possible."

In *Stock-Growers' Bank v. Newton,* Mr. Justice Elliott, who delivered the opinion of the court, uses this language:

"It is further contended by counsel that, under the code, the plaintiff, not being in possession of the premises, cannot maintain this action. The authorities are somewhat confusing upon this subject. The true rule undoubtedly is that a person claiming a purely legal title to real property, with right of immediate possession in himself—as a fee-simple absolute—cannot maintain the action provided by the code for the determination of an adverse claim, estate or interest therein, unless when he institutes the proceeding he be in possession thereof by himself or his tenant. The reason is obvious. Being out of possession, under such circumstances he has a complete remedy by an action for possession in the nature of ejectment, and there is no necessity for equitable relief. But where a party can only assert an equitable title to real property, though his interest may be full and complete—as where there is some trust to be declared, or legal title to be extinguished, some instrument not void on its face to be canceled or corrected, or other obstacle to be removed before his rights can be made manifest—he may, though out of possession, under a system of procedure like ours, have his equitable remedy, and may unite with it any appropriate cause of action through which he may secure the full and adequate relief to which he may be entitled."

It is manifest that in either aspect the plaintiff was entitled to have the merits of the controversy between it and the defendant tried and determined in this action, and the court erred in sustaining the mo-

tion to dismiss the proceeding upon the ground therein stated.

Judgment reversed and cause remanded.

*Reversed and remanded.*

CHIEF JUSTICE STEELE and Mr. JUSTICE BAILEY concur.