[No. 3390.]

WANNAMAKER ET AL. V. PENDLETON ET AL.

1. QUIETING TITLE—To Water Rights. A bill to quiet title to stock in an irrigating company, which entitled the owner to a certain volume of water, entertained.

2. —— Defendant's Title. The defendant must not only allege but affirmatively prove his title to the thing in controversy.

3. ESTOPPEL—As Between Principal and Agent. One who has sold stock in an irrigating ditch, but retains possession of the certificates and control of the water to which the holder of the shares is entitled, promising the assignee to care for the water until she has occasion for it, will not be heard to plead laches or non-use of the water to bar an action by the assignee asserting his right to the stock and the water.

4. EQUITY—Laches—Who May Plead. Defendant claiming a volume of water distinct from that to which the plaintiff makes claim is not in position to charge the plaintiff with laches.

5. JUDGMENT—Must Rest Upon the Pleadings. No judgment can be given as between the different defendants, where no issue is made between them.

6. EVIDENCE—Who May Object for Incompetency. The plaintiffs united in a bill to quiet title to a water right. The complaint alleged a purchase by Swan as their trustee. The right of the parties was in no way dependent upon whether a trust relation existed or not. Held that defendants were not prejudiced by the admission of incompetent testimony to prove the trust.

*Appeal from Jefferson District Court.* HON. FLOR ASHBAUGH, Judge.

Mr. HENRY C. ALLEN, and Messrs. JOHNSON and JOHNSON, for appellants.

Mr. GEORGE W. TAYLOR, for appellees.

Presiding Judge Scott delivered the opinion of the court.

This is an action on the part of the appellees, plaintiffs below, to quiet title to certain shares of stock and the right to the use of water thereunder

of the Golden City and Ralston Creek Ditch company. The complaint alleges in substance that the ditch in question is used for the irrigation of lands, taking its water for such purpose from the natural stream of Clear Creek. That the said ditch was originally constructed by the said Golden City and Ralston Ditch company, a corporation organized under the laws of the territory of Colorado, in 1865, and was entitled to the use of such waters by a decree dated October 4th, 1864; that the capital stock of said corporation was thirty thousand dollars divided into one hundred shares, of three hundred dollars each; that the ditch was constructed for the purpose of furnishing its then stockholders with water for the irrigation of their respective lands laying under said ditch, and the water so appropriated was divided pro rata, among the stockholders, according to the number of shares of stock of said company. That in 1877 the ditch as then constructed and existing was leased to George H. Church for a term of forty-nine years; that Church agreed as one of the considerations of the lease to furnish free of charge to each and every stockholder in said company his pro rata of water from the ditch. That on the 9th day of January, 1885, the charter of said corporation having expired, or then about to expire by limitation, the defendant corporation, the Golden Ralston Creek and Church Ditch company, was organized under the laws of the State of Colorado, for the purpose of protecting and perpetuating the existence and franchises of the said Golden City and Ralston Ditch company, and to secure to the stockholders of such company, and to all those interested in that corporation, all their

vested rights and privileges.. That on the 28th day of January, 1883, defendant Jonas E. Wannamaker was the owner and possessed among other shares, two and three-quarters shares of the capital stock of the original company. That thereby the said Wannamaker was entitled to have delivered to him free of charge thirty-three inches of water from the said ditch. That on the 25th day of April, 1889, the said Wannamaker sold, transferred and delivered to Carrie E. Swan for the consideration of twelve hundred dollars, said two and three-quarters shares of the said capital stock and at the same time and for the same consideration, by another instrument of writing, transferred and conveyed unto the said Swan the water rights and interest in said ditch represented by the shares so transferred. That in making said purchase the said Swan acted for the plaintiffs as their trustee, plaintiffs, with the exception of Mary E. Pendleton, then being minors. That afterward and on the 13th day of June, 1906, the plaintiffs, each having become of legal age, Swan transferred the certificates of stock and the instrument of writing to the plaintiffs, who are now the owners of same and entitled to the use of the said water for irrigation purposes.

Further, that the defendants Jonas E. Wannamaker, Elizabeth A. Wannamaker, John Morris, Thomas Trezise, Harry Lugg and Harriet Lugg claim an estate and interest in said ditch and the said water rights of the plaintiffs adverse to the plaintiffs. The complaint further alleged that because of the adverse claims of the said defendants, the defendants Church, and the ditch company, refuse to recognize the rights of plaintiffs and refuse

to turn out to them for their use the said thirty-three inches of water, and that the defendant corporation refuses to transfer or re-issue a certificate, or certificates, of shares of stock in lieu thereof.

The defendants admit the allegations in the complaint as they may relate to the appropriation of the water and the existence and character of the corporations referred to therein. The defendants Wannamaker admit the ownership of the two certificates for the two and three-quarters shares of stock and the date thereof as alleged in the complaint, and that the same represented the free delivery of thirty-three inches of water from the ditch in question. They do not deny the sale of the shares of stock or the execution of the accompanying agreement to Swan, but deny ownership upon the part of the plaintiffs.

The defendants further plead the statute limitations and declare that the plaintiffs are not the owners of land upon which water may be used, and plead laches upon the part of the plaintiffs. The defendants, Trezise, Morris and the Luggs plead ownership of the water rights in question to the extent of a total of thirty-seven inches, and base their claim thereto upon the purchase of certain real estate from the defendants Wannamaker, together with agreements with them for the use of the water.

They likewise plead the non use of the water upon the part of the plaintiffs, and the statute of limitations.

The judgment of the court was for the plaintiffs and adjudged that the plaintiffs to be in possession of the shares of capital stock set out in the complaint, of the Golden City Ralston Ditch com-

pany, and that such stock represented two hundred and seventy-five ten thousandths parts, portion and interest in and to the Golden City Ralston Ditch company as originally constructed, and a like interest in the original appropriation of water by said ditch for irrigation purposes, subject to the terms of the lease set forth in the complaint; and entitled to thirty-three inches of water therefrom.

The court further adjudged the claims of the appellants to be without force and quieted title to the property in question in the plaintiffs.

Upon the hearing, the court dismissed the action as to the defendants Church, and the ditch company.

The allegations concerning the appropriation of the water, the organization and character of the several corporations, and concerning the lease to Church are not controverted. The purchase of the two and three-quarters shares of stock of the original company, by Carrie E. Swan, now Carrie Swan Young, from the defendant Jonas E. Wannamaker at the time, and for the use named in the complaint, is clearly proven. These shares were never transferred on the books of the original company and have not been re-issued by the defendant corporation.

It appears that prior to the purchase of stock by Swan, the father of the plaintiffs had entered and secured title to 160 acres of land under the timber culture law. The father died leaving as his only heirs the plaintiffs who, with one exception, were minors at the time of the purchase of the stock by Swan. This land, or a part of it, was under the ditch in question, which was commonly known as the "Church" ditch. Water was used from the ditch

in the growing of trees, required to secure title in such case. The right to the water so used was not that in controversy. After the death of. the father of the plaintiffs, Carrie E. Swan, who was a relative, lived with and cared for plaintiffs, who were at least partially supported by their grandfather residing in another state. -This grandfather furnished the money used for the purchase of the shares of stock in question for the purpose of supplying water for use upon this land of the children.

The certificates of shares of stock together with the accompanying agreement, were taken in the name of Swan, because of the non-age of the plaintiffs, and were for the use and benefit of the latter. After all of the plaintiffs had arrived at the age of maturity, and prior to the commencement of this suit, and at the request of the grandfather, the shares of stock and the agreement were formally assigned by Swan, to the plaintiffs.

No administrator of the estate of the father, and no guardian of the children seem ever to have been appointed. Neither Swan, during the time that the shares were in her name, nor the plaintiffs since that time, have ever personally applied the water represented by the shares in controversy to use, for the reason as it appears, that they were unable to have the water carried to the land, on account of the claim upon the part of the management of the ditch that it would be necessary to enlarge the ditch in order to do so.

At the time of the sale of the stock to Swan, and now, so far as the books of the company show, Wannamaker was the owner of six and three-fourths shares. Church who has been the manager of the

ditch company for twenty years, testified that his transactions have always been with Wannamaker in relation to the water represented by the six and three-fourths shares, including the two and three-fourths shares in controversy, and that he did not know any other person in connection therewith, and has had no transaction with either of the plaintiffs or defendants save and except Wannamaker; that he did not know until two years prior to the time of the trial that the shares in controversy had been assigned to Swan, at which time one of the plaintiffs asked that these shares be re-issued, and when he said to such plaintiff that he could not transfer them because of the dispute between the plaintiffs and Wannamaker.

The claim of the defendant Trezise is based upon a warranty deed from defendants Wannamaker for a tract of ten acres of land and dated March 1, 1893. This deed is in the usual form with the exception of the following:

"Saving and reserving to the parties of the first part and their heirs and assigns the right of way for one or more ditches over and across said described land for irrigating purposes. The party of the first part hereby conveys to the party of the second part the water right to purchase the water for the above described tract of land."

Trezise testified that he has used fifteen inches of water since his purchase of the land, paying the Wannamakers $1.50 per inch, each year; that he understood that the Wannamakers had eighty inches of water at the time he purchased the land; that he did not purchase any of the stock of the company,

and did not know that any had been sold to Swan, and never had any dealings with the water company.

The defendants Lugg claim under a deed for a tract of land from Wannamaker to one Perkins, who in turn conveyed it to the Luggs. Perkins' deed is in the usual form of warranty deed with the following exception, only:

"The party of the first part expressly reserves the right of way for the Arapahoe ditch which is now on said land and also the right of way for ditch or ditches, to convey water over and across said described land to the lands of the party of the first part, their heirs and assigns forever."

Perkins testified that when he purchased the land he understood that ten inches of water went with it, and so told Lugg, his grantee.

Both Perkins and Lugg say they did not have any transactions with the ditch company but have paid Wannamaker $1.50 per inch each year for the use of the ten inches of water. Neither Perkins nor Lugg knew of the transaction between Wannamaker and Swan.

The defendant Morris' claim is based upon a verbal arrangement with the Wannamakers. He says: "That in the spring of 1894 he went down and saw Wannamaker and made arrangements for twelve inches of water and was to pay $1.50 an inch per year for it and has been using it ever since under that arrangement."

Counsel for these appellants say that the main point effecting the rights of such appellants, is whether or not the water rights adjudged to belong to the appellees are the same rights claimed

by the appellants. Upon this point the court found as a matter of fact that they were not, and such finding seems to be fully justified by the evidence.

The defendants below demurred generally to the complaint of the plaintiffs upon the ground that the complaint is not sufficient in law to constitute a cause of action. This objection was urged in the pleadings and in other forms upon the trial. This ruling of the court is urged as error. We think not. We agree with counsel for appellants, that the action is one to quiet title. If so the complaint is sufficient to sustain such an action.

It has been repeatedly held in this state that an action will lie to quiet title to water rights:

*Guthiel Co. v. Montclair*, 32 Colo. 420; *Grand Valley Irri. Co. v. Lesher*, 28 Colo. 273; *Kimball v. Northern Colo. Irr. Co.*, 42 Colo. 412.

There is some contention upon the part of the appellants that the proof does not show plaintiffs to be in possession at the time suit was instituted. But the court found otherwise and it is not therefore necessary to determine in this case whether such proof is essential to recovery.

Swan testified that after purchasing the water she went to Church and told him that she must get the water through the Church extension so as to reach plaintiffs land, and asked him to allow this to be done, which he refused; that she then saw Wannamaker and told him that she was unable to get the water; that he told her he would see what could be done about it and said he would take care of the water for her until such time as she had demand for it. He also told her that the original stock was better than to have it transferred on the books.

Wannamaker does not claim title to the shares of stock or water right in question. But if he had so claimed he is estopped from doing so under the finding of the lower court. He was at least in charge of the water for Swan and therefore cannot dispute her title.

"The estoppel in such case is like that which arises in the case of landlord and tenant, and comes within the scope of the general rule that an agent in possession cannot deny the title of his principal." —*The Cons. Plaster Co. v. Wild.* 42 Colo. 202.

Under this state of facts it does not lie with Wannamakers to plead laches, or non-use of the water. Particularly when the use of it for all these years by Swan's agreement with him has accrued to his own advantage. The trial court having found that the water and the rights claimed by the plaintiffs are not the same, but different from those claimed by Morris, Trezise and Lugg, the latter are not in a position to claim laches upon the part of the plaintiffs, for their rights can in no way be effected.

It is urged by counsel for appellants, Trezise, Morris and Lugg that the court should have adjudicated the rights of such appellants, presumably as between such appellants and the Wannamakers, in order to protect them from the force of the decree entered in favor of the appellees.

Just how this could have been done in this case is not clear. There was no issue pleaded as between the Wannamakers and the appellants Morris, Trezise and Lugg. Neither do we feel called upon to consider this question. It is clear that whatever claims the last named appellants had, against the

Wannamakers, if any, were such as could have been enforced at the date of the trial, if not in this action, then in an independent suit. But these appellants assert no such claim in this suit and ask for no such relief.

It is not disputed that at the time of the several contracts and agreements between the Wannamakers and such appellants, and at the time of the trial, the Wannamakers were the owners and in possession of the right to use water from the Church ditch, in an amount in excess of the total claimed by such appellants, under such agreements, and this, independent of that sold by the Wannamakers to the plaintiffs.

Briefly, this case is one simply to quiet title in the plaintiffs to certain shares of stock in the Golden City and Ralston Creek Ditch company and to the use of the water represented thereby. The water was actually used by Wannamaker subsequent to the sale to Swan and which use, the court must have found to have been under the agreement with Swan. Therefore this use of the water by Wannamaker under such arrangement, takes from us consideration and determination of the question of application to beneficial use, argued by counsel, and likewise eliminates the question of laches.

The defendants Trezise, Morris and Lugg offer no proof in support of their respective claims to the particular water, claimed by plaintiffs, or to the use thereof.

"While plaintiff to maintain the statutory action must aver and prove possession coupled with title, the duty is devolved upon the defendant of asserting an adverse interest in himself, and spe-

cifying its nature."—*Wall v. Magness,* 17 Colo. 476.

If, therefore, it is necessary upon the part of the defendant to assert such adverse title and to specify its nature, proof of the same is likewise equally important.

Objection was made to the testimony of Swan relative to the trust relationship between herself and the plaintiffs. Just how this can be material to the appellants does not appear. The rights of neither are in any sense dependent upon whether there was or was not such trust relation. Neither claims that his acts could or would have been different in case of knowledge of such trust. Hence we do not feel it necessary to enter upon the discussion of this question.                    *Judgment affirmed.*

All the judges concur.

WALLING, J., not sitting.